[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15204
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 02-20552-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OMAR OLIVEROS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 27, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Omar Oliveros appeals his concurrent 115-month

sentences for conspiracy with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and attempting to possess with intent to distribute cocaine, also in violation of §§ 841(b)(1)(A) and 846. After review, we affirm, but remand for the district court for the limited purpose of correcting a clerical error in the judgment.

## I. BACKGROUND

Because Defendant Oliveros claims he was entitled to a minor role reduction in his sentence, we start with a review of the offense conduct.

### A. Offense Conduct

In 2002, during a Drug Enforcement Agency ("DEA") investigation into drug trafficking in Colombia, an undercover agent and a confidential informant ("CI") negotiated with a cocaine source, "Arturo," to ship 20 kilograms of cocaine to Miami. Upon its arrival in Miami, two U.S. Customs Agents seized luggage containing the cocaine.

The undercover agent and the CI coordinated with Arturo to deliver half the cocaine to Jorge Cepero for $50,000.[1] The agent and the CI met with Cepero, who arrived with Defendant Oliveros. When the CI asked to see the payment for the

---

[1]The other half of the cocaine was to be delivered to Albert Torres. Torres and another individual were arrested when they met with the agent and the CI to take delivery of the other 10 kilograms of cocaine.

cocaine, Defendant Oliveros left and retrieved money in his car. The agent and the CI had Cepero and Defendant Oliveros follow them to another location, and, as Cepero and Oliveros inspected the cocaine, they were arrested.

Defendant Oliveros was released on bond pending trial. After his release, Oliveros failed to appear in court as required by the conditions of his release. Oliveros remained a fugitive for seven years until he was arrested in Mexico and extradited to the United States in 2009. Once back in the United States, Oliveros pled guilty to the two drug counts and to a separate charge of failing to appear before a court as required by conditions of pre-trial release, in violation of 18 U.S.C. § 3146(a)(1).

**B.    PSI**

The presentence investigation report ("PSI") calculated a base level offense of 32, pursuant to U.S.S.G. § 2D1.1(c)(4), based on a drug quantity of at least 5 kilograms but less than 15 kilograms.[2] The PSI added a 2-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because Oliveros absconded while on pretrial supervision. Although the PSI initially calculated an adjusted offense level of 34, the revised PSI gave Oliveros a two-level safety valve

---

[2]For purposes of calculating the offense level, the PSI grouped the failure to appear offense together with the drug offenses, pursuant to U.S.S.G. § 3D1.2(c), because the failure to appear offense was treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the drug offenses.

reduction pursuant to U.S.S.G. § 2D1.1(b)(11) after the government confirmed that Oliveros met the safety valve criteria.

The PSI recommended an adjusted offense level of 32 with a criminal history category of I, yielding an advisory guidelines range of 121 to 151 months. The statutory minimum for Oliveros's drug charges is 10 years with a maximum of life, and the statutory maximum for the failure to appear charge is 10 years consecutive to any other sentence.

The PSI noted that Defendant Oliveros was born in Cuba, settled in Miami in 1995 after fleeing Cuba on a raft, worked as a car mechanic in Miami and later as a handyman in Mexico, and regularly sent money to support his daughter who lived in Cuba with Oliveros's mother. Because Oliveros was classified an aggravated felon, he was subject to removal proceedings.

Oliveros objected to the PSI's failure to give a two-level minor role reduction.[3] Oliveros argued that while Cepero had contact with the cocaine suppliers, set up the transaction, and had experience in drug trafficking, Oliveros acted only as Cepero's assistant.

Oliveros also requested a downward variance, arguing that he presented a low risk of recidivism, that he fled to Mexico because of his perceived danger to

_____

[3]Oliveros also objected to not receiving a reduction for acceptance of responsibility, which the district court overruled. Oliveros does not appeal this ruling.

4

himself or his family, that an unwarranted sentencing disparity would exist between Oliveros and Cepero, that Oliveros already had spent five months in harsh conditions in a Mexican prison while awaiting extradition, that he is a first-time, non-violent offender, and that he had maintained employment to support his mother and daughter.

## C.    Sentencing

At the sentencing hearing, the district court inquired about Oliveros's reasons for fleeing to Mexico for seven years while on pre-trial release.  Oliveros's attorney explained that after Oliveros and Cepero were arrested, both agreed to cooperate with the DEA and were released on bond.  Cepero disappeared, leaving Oliveros, who had no relationship with the cocaine suppliers and could not provide the information the government wanted.  Oliveros received an anonymous phone call at work suggesting that it would be in his best interest to flee the country. Because Oliveros feared that Cepero had let his contacts in South America know that Oliveros was cooperating with the DEA, Oliveros decided to flee.

The government responded that Oliveros never told the agents of any threat against him in order to avail himself of their protection, did not contact DEA or Mexican authorities once he was in Mexico and would not have been found but for the government's own efforts.

The district court denied Oliveros' request for a minor role reduction, stating:

> I think that the amount of cocaine involved here and the defendant's own activities with respect to the ten kilograms of cocaine for which he was involved in providing the money are significant enough that a minor role reduction would not be appropriate here, even if he's less culpable than other people who can be identified. His role was very significant. Obviously, he was entrusted with a very large sum of money by the members of this drug trafficking organization in order to assist in taking delivery of the ten kilograms of cocaine. And as I said, this is a very large amount of cocaine, and I do not think that a minor role reduction is warranted or established by a preponderance of the evidence in this case.

After confirming that Oliveros's advisory guidelines range was 121 to 151 months, the district court stated it was inclined to impose a low-end sentence.

Oliveros argued in favor of a downward variance, pointing out that: (1) he was a first-time nonviolent offender and a hard worker; (2) he had a low risk of recidivism; (3) his flight, which was based on his fears of reprisal, substantially increased his guidelines range; (4) he played a limited role in the drug importation scheme; (5) he was incarcerated in harsh conditions in Mexico while awaiting extradition; and (6) the court had received numerous letters from his family and friends evidencing his good character. Oliveros's sister, Zulay, spoke on his behalf, stating that Oliveros had worked hard in honest jobs to help his mother and his daughter. Oliveros addressed the court, apologizing for his actions.

The district court denied the request for a downward variance, stating:

This is no small matter.  This case involved a large amount of cocaine.  It's a very serious offense.  It requires a serious punishment, and certainly deterrence is an important factor in any drug trafficking case, especially when we're dealing with someone who sought safe harbor in this country, sought to come here and sought the privileges of living here, and then turned around really a short time after arriving and attaining residency here and so terribly offending against the United States by committing such a serious crime.  So, I think a guideline sentence is what's called for here after considering all of the factors, I think the seriousness of the offense, the need for deterrence, and frankly, the history and characteristics of the defendant, the fact that he would flee.  I'd like to point out that the defense attempts to describe what allegedly caused him to flee as a threat.  Even the defendant's own description of what occurred doesn't even rise to the level of a threat.  And as [the government] pointed out, the defendant had choices other than to flee.  So, I think that taking those factors into account as well as all the other factors, a guideline sentence is the most appropriate sentence in this case.

The court stated that it had considered the parties' statements, the PSI, the advisory guidelines range (121 to 151 months), and the statutory factors and found a sentence at the low end of the range to be fair, reasonable, and sufficient to punish and deter Oliveros.  The court imposed concurrent 115-month sentences for the two drug counts and a consecutive 6-month sentence for Oliveros's failure to appear, for a total period of incarceration of 121 months.  Oliveros appealed the sentences on the drug counts, but did not appeal the consecutive six-month sentence for failing to appear.

## II.  DISCUSSION

7

## A. Minor Role Reduction

Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease if the defendant was a minor participant in any criminal activity. U.S.S.G. § 3B1.2(b). A defendant is a minor participant if he is less culpable than most other participants, but his role cannot be described as minimal. Id. § 3B1.2 cmt. n.5. The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999).

"Two principles guide the district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense." United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006). When the relevant conduct attributed to defendant is the same as his actual conduct, "he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable." Id.; see also De Varon, 175 F.3d at 942-43 (concluding that "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs").

As to the second prong, the district court is permitted to "measure the defendant's conduct against that of other participants" but only "where the record evidence is sufficient." De Varon, 175 F.3d at 934. Furthermore, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." De Varon, 175 F.3d at 944.[4]

The district court did not clearly err in denying Oliveros's request for a two-level role reduction. As the district court noted, even if Oliveros was less culpable than Cepero, he still played a significant role in the drug deal considering he was entrusted with the large sum of money, $50,000, needed to complete it. The large quantity of drugs involved also militates against finding a minor role. See id. at 943 (explaining that the amount of drugs is relevant to determining a participant's role in a drug conspiracy). Furthermore, Oliveros was not held accountable for the larger importation conspiracy, but only for the 10 kilograms of cocaine he and Cepero intended to purchase with the $50,000 Oliveros brought to the negotiations. Under the circumstances, Oliveros did not show he played a minor role in the 10-kilogram cocaine transaction.

## B. Substantive Unreasonableness

[4]A sentencing court's determination of a defendant's role in an offense constitutes a factual finding that we review for clear error. De Varon, 175 F.3d at 937.

9

In reviewing the reasonableness of a sentence, we apply an abuse of discretion standard using a two-step process. United States v. Pugh, 515 F.3d 1179, 1189-90 (11th Cir. 2008). First, we look at whether the district court committed any significant procedural error and then we look at whether the sentence is substantively unreasonable under the totality of the circumstances. Id. at 1190. The party who challenges the sentence has the burden to show it is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[5] Although we do not apply a presumption of reasonableness, we ordinarily expect a sentence within the correctly calculated advisory guidelines range to be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Oliveros argues that his 115-month concurrent sentences are unreasonable because the district court focused solely upon the advisory guidelines range and did not adequately consider his unique circumstances, such as his first-time offender status, his low risk of recidivism, his reasons for fleeing and his lesser

---

[5]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

role. Contrary to Oliveros's claims, the district court heard and considered all of these mitigation arguments. See United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007) (explaining that the failure to discuss the defendant's mitigation arguments on the record does not mean the district court failed to consider or ignored them). The district court concluded that Oliveros's mitigating facts were outweighed by seriousness of his offenses and the need for deterrence and did not warrant a sentence below the advisory guidelines range. We have no reason to disturb the district court's weighing of the relevant factors. See id. at 832 ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." (quotation marks omitted)). Under the circumstances, the district court did not abuse its discretion in imposing 115-month concurrent sentences, which placed his drug sentences below the advisory guidelines range of 121 to 151 months. In addition, even adding in the six-month consecutive sentence, Oliveros has not shown his total sentence of 121 months is substantively unreasonable.

## C. Clerical Error

We sua sponte note that there is a clerical error in the judgment. See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006) ("We may sua sponte raise

11

the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors.").  The judgment states that Oliveros is to be imprisoned for a term of "121 MONTHS.  This term consists of 115 months as to Counts One and Three in Docket No. 02CR20552 and 6 months as to Count One in Docket No. 03CR20811, **to be served concurrently**."  The total amount of the prison term and the district court's statements during sentencing indicate, however, that the six-month term must be served consecutively.  The judgment should be corrected to read, "This term consists of 115 months as to Counts One and Three in Docket No. 02CR20552, **to be served concurrently**, and 6 months as to Count One in Docket No. 03CR20811, **to be served consecutively**."  Accordingly, although the underlying sentences are affirmed, we remand the case to the district court to correct this clerical error.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**