[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 4, 2006
THOMAS K. KAHN
CLERK

No. 05-15683
Non-Argument Calendar

_____

D. C. Docket No. 05-00084-CR-2-WBH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE JESUS ALVAREZ-CORIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 4, 2006)

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Jose Jesus Alvarez-Coria appeals his 86-month

sentence for (1) conspiracy to possess with the intent to distribute at least 500 grams of methamphetamine and at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 963 and 841(b)(1)(A)(ii) and (viii); (2) attempting to possess with the intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii); and (3) attempting to possess with the intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). After review, we affirm.

## I. BACKGROUND

Alvarez-Coria, his co-defendant Roberto Zavala and a third man, Jose Nabil Dager, were arrested in Atlanta, Georgia after they were caught trying to transport 9 kilograms of cocaine and 46 kilograms of methamphetamine from Texas to Georgia. According to Alvarez-Coria's Presentence Investigation Report ("PSI") and his plea colloquy, Alvarez-Coria was introduced by his wife's cousin to people involved in drug sales. One of these individuals, called "Primo1,"[1] asked Alvarez-Coria to deliver drugs from San Juan, Texas to Atlanta, Georgia in exchange for $3,000 to $4,000.

Alvarez-Coria met with Zavala and another man, Isidor Saldivar (referred to as "Primo2"), at a church, where they discussed finding a driver for the delivery.

---

[1]Because Alvarez-Coria referred to a number of people involved in the conspiracy as "Primo," the PSI numbered them for clarity.

Zavala located a driver, who turned out to be a Confidential Source ("CS") for the San Benito, Texas police department. The CS informed investigators that he had been asked to drive 56 kilograms of cocaine to Atlanta.

On January 25, 2005, Alvarez-Coria, Zavala and Saldivar met at a restaurant parking lot. Saldivar gave Zavala the vehicle containing the drugs to deliver to the CS. Alvarez-Coria gave Zavala his truck and instructed him to give the truck to the CS as collateral for payment for the trip to Atlanta. Once the CS returned from Atlanta, the CS could exchange the truck for his payment.

After receiving the vehicle containing the drugs from Zavala, the CS drove it to investigators, who found three large plastic containers with 47 bundles of methamphetamine and 9 bundles of cocaine. The Drug Enforcement Agency planned a controlled delivery and flew the drugs and some agents to Atlanta to set up surveillance and complete the transaction.

The CS transported the vehicle to Atlanta on January 26, 2005. Alvarez-Coria, Zavala and Dager also drove to Atlanta and checked into a hotel. On the morning of January 27, 2005, Alvarez-Coria, at Primo1's instruction, met with an individual identified as Primo3, who told Alvarez-Coria to swap cars and that someone would meet Alvarez-Coria after he had obtained the drugs. Alvarez-Coria and Zavala then met the CS at a restaurant. After a brief conversation, they

3

left the restaurant and drove to a Sam's Club parking lot, where they transferred the three containers from the CS's vehicle to Alvarez-Coria's vehicle. Alvarez-Coria left the CS and Zavala and drove the vehicle with the containers across the street to a gas station, where he was supposed to meet an unidentified person and follow that person to an unknown location and deliver the drugs. Alvarez-Coria and Zavala were then arrested.

In his post-arrest statement, Alvarez-Coria admitted traveling from Texas with Dager and stated that, although he did not know why they were traveling to Georgia, he knew it was related to drugs. According to Alvarez-Coria, he and Zavala were instructed by Dager to pick up the containers. Alvarez-Coria admitted knowing the containers held drugs, but stated that he did not know what kind.

Alvarez-Coria's indictment charged him with, inter alia, conspiring to distribute both cocaine and methamphetamine. At his plea colloquy, Alvarez-Coria again admitted that he knew the three containers had contained drugs, but that he thought the drugs were cocaine and not methamphetamine. Alvarez-Coria pled guilty to all three counts in the indictment, but reserved his right to challenge the weight and type of drugs attributed to him at sentencing.

At sentencing, over Alvarez-Coria's objection, the district court held Alvarez-Coria responsible for the 46 kilograms of methamphetamine and the 9

kilograms of cocaine found in the three containers.[2]  The district court also denied

Alvarez-Coria's request for a minor role reduction.  With an adjusted offense level

of 33 and a criminal history category of I, Alvarez-Coria's advisory Guidelines

range was 135 to 168 months' imprisonment.  The district court concluded that,

because Alvarez-Coria was entitled to a safety-valve reduction, he was not subject

to the mandatory minimum ten-year sentence.

In arriving at a reasonable sentence, the district court considered the

advisory Guidelines range and the factors in 18 U.S.C. § 3553(a).  The district

court noted, among other things, that there was no evidence Alvarez-Coria knew

that the conspiracy in which he was participating involved methamphetamine and

that Alvarez-Coria's participation in the conspiracy came close to a minor role.

The district court imposed an 86-month sentence.  This appeal followed.

## II.  DISCUSSION

### A.    Minor Role Reduction

On appeal, Alvarez-Coria argues that the district court clearly erred in failing

to grant him a minor role reduction.  We review for clear error a district court's

---

[2]The district court adopted the PSI's calculation of Alvarez-Coria's base offense level pursuant to U.S.S.G. § 2D1.1(c)(1) (2004) using a combined marijuana equivalency of 935,406.4 kilograms.  The Drug Quantity Table in § 2D1.1(c)(1) sets a base offense level of 38 for at least 30,000 kilograms or more of marijuana equivalency.  The PSI noted that the quantity of methamphetamine (933,600 kilograms of marijuana equivalency) was over thirty times the amount needed to achieve an offense level of 38.

determination of a defendant's qualification for a role reduction. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

The defendant has the burden of establishing his role in the offense by a preponderance of the evidence.[3] Id. at 939. Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 940-45. When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable. Id. at 941. In addition, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." Id. at 944.

The district court did not clearly err in refusing to grant Alvarez-Coria a minor role reduction. With respect to the first prong of De Varon, Alvarez-Coria

_____

[3]Pursuant to U.S.S.G. § 3B1.2, the defendant is entitled to a four-point decrease in his offense level if he was a minimal participant, and a two-point decrease if he was a minor participant. Whether a defendant qualifies for a decrease is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(c). A "minimal participant" is someone who is "plainly among the least culpable of those involved in the conduct of a group." Id. at cmt. n.4. A "minor participant" is a person who is "less culpable than most other participants, but whose role could not be described as minimal." Id. at cmt. n.5.

6

was held accountable for only the drugs found in the three plastic containers that Alvarez-Coria admitted conspiring to transport to Atlanta. Therefore, Alvarez-Coria's actual and relevant conduct were the same and he did not play a minor role in that conduct.

With respect to the second prong of <u>De Varon</u>, the record indicates that Alvarez-Coria was at least as culpable as Zavala. Furthermore, Alvarez-Coria presented no evidence showing that his responsibilities during the trip were less important to the conspiracy than those of Zavala or Dager. Alvarez-Coria gave Zavala his truck to deliver to the CS as security until the transaction was completed. Those arguably higher up in the conspiracy, including Primo1, Primo2 and Primo3, often communicated with Alvarez-Coria and coordinated some of the co-conspirators' movements through him. More importantly, unlike Zavala and Dager, Alvarez-Coria was entrusted with driving the drugs away after the rendezvous with the CS. Therefore, Alvarez-Coria was not entitled to a minor role reduction.

**B.     Alvarez-Corio's Knowledge of Drug Type**

In calculating Alvarez-Coria's base offense level under the Sentencing Guidelines, the district court held Alvarez-Coria responsible for the methamphetamine found in the three containers. Alvarez-Coria argues that the

district court clearly erred in doing so because Alvarez-Coria had not agreed to transport methamphetamine and could not have reasonably foreseen that he would be entrusted with delivering methamphetamine. We disagree.[4]

Under U.S.S.G. § 1B1.3, the district court must consider "relevant conduct" when calculating a defendant's base offense level, including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . ." U.S.S.G. § 1B1.3(a)(1)(A) (2004). A defendant's accountability under subsection (a)(1)(A) is not limited by what is reasonably foreseeable because the reasonable foreseeability requirement only applies to the conduct of others. U.S.S.G. § 1B1.3, cmt. n.2. As an example of conduct for which the defendant is held accountable, the commentary to § 1B1.3 notes that "a defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance." U.S.S.G. § 1B1.3, cmt. n.2(a)(1).

Similarly, this Court has "consistently recognized deliberate ignorance of criminal activity as the equivalent of knowledge." United States v. Prather, 205

---

[4]We review a sentencing court's factual findings for clear error and its application of the Sentencing Guidelines to those facts de novo. United States v. Jackson, 276 F.3d 1231, 1233 (11th Cir. 2001).

F.3d 1265, 1270 (11th Cir. 2000) (citation omitted) (reviewing a deliberate indifference jury instruction). We have applied this principle at sentencing to conclude that a defendant need not know the type of drug involved in a drug offense in order to receive a statutory mandatory-minimum sentence based on that type of drug. See United States v. Gomez, 905 F.2d 1513, 1514-15 (11th Cir. 1990) (stating that "those who, acting with a deliberate anti-social purpose in mind, become involved in illegal drug transactions, assume the risk that their actions will subject them to enhanced criminal liability") (citation omitted).

Whether the presence of methamphetamine was reasonably foreseeable to Alvarez-Coria is immaterial because Alvarez-Coria is being held accountable for his own conduct, not the conduct of his co-conspirators. Alvarez-Coria knowingly participated in a plan to transport three drug-filled containers to Atlanta. The fact that Alvarez-Coria did not know the type or quantity of the drugs did not preclude the district court from attributing the drugs to him for sentencing purposes. Under U.S.S.G. § 3B1.3 and its commentary and the reasoning of Gomez, the district court correctly attributed both the methamphetamine and the cocaine to Alvarez-Coria.

Accordingly, we affirm Alvarez-Coria's 86-month sentence.

**AFFIRMED.**