[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14957
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 06, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-20387-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ONEL MENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 6, 2010)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Onel Mendez appeals his 37-month sentence for

knowingly receiving, possessing, concealing and storing stolen goods, in violation of 18 U.S.C. § 2315. After review, we affirm.

## I. BACKGROUND FACTS

### A. Offense Conduct

On April 15, 2009, a shipping container loaded with 12 million Newport cigarettes was stolen from a truck yard in Concord, North Carolina. On April 16, 2009, a private investigator hired by the cigarette manufacturer spotted a tractor trailer pulling the stolen container on a Florida road. The Florida Highway Patrol ("FHP") performed a traffic stop, identified Mendez as the driver and confirmed that the stolen cigarettes were inside the container. During a search of the tractor trailer, FHP found a receipt from a convenience store in Mebane, North Carolina, a signed shipper's declaration of dangerous goods with "Newport boxes" listed as cargo, a global positioning system ("GPS") device, a cell phone and a portfolio containing driver's logs.

After waiving his Miranda rights, Mendez gave conflicting statements regarding how, when and where he came to be driving the tractor trailer and in possession of the stolen container of cigarettes. The data from Mendez's GPS device and cell phone placed him at or near: (1) the manufacturer's plant when the cigarettes left the plant; (2) the truck yard where, and at the time when, the tractor

2

trailer and container were stolen; and (3) a South Carolina truck stop where a truck driver saw three men transfer the stolen container from a stolen rig to a tractor trailer that matched the description of the tractor trailer Mendez was driving. Further, Mendez later admitted that he had forged a signature on the bill of lading and on log book entries for April 9 and 15, 2009. The log book also omitted any stops along the route from North Carolina to Florida, including the stop Mendez made in Mebane, North Carolina for which investigators had found a receipt.

**B.     Sentencing**

The presentence investigation report ("PSI") recommended: (1) a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2); (2) a 16-level increase, under U.S.S.G. § 2B1.1(b)(1)(I), because the intended loss, $2,129,448, was more than $1,000,000, but less than $2,500,000; (3) a 2-level increase, pursuant to U.S.S.G. § 2B1.1(b)(12)(B), because the offense involved an organized scheme to steal goods that were part of a cargo shipment; and (4) a 3-level reduction for acceptance of responsibility. With an adjusted offense level of 21 and a criminal history category of I, the PSI suggested an advisory guidelines range of 37 to 46 months' imprisonment.

Among other things, Mendez objected to the PSI's failure to make a minor-

role reduction.[1]  Mendez argued he was not involved in planning the offense, was the last of three drivers to possess the stolen container, had no equity interest in the cigarettes and was not going to be compensated based on the wholesale price ultimately obtained for them, and had no role in the ultimate sale of the cigarettes. Mendez contended that others coordinated the theft and planned distribution and he merely transported the container from South Carolina to Florida.

The government opposed a minor-role reduction because Mendez was being held accountable for only his own conduct and not for the larger conspiracy.  The government pointed out that the undisputed facts from Mendez's plea colloquy showed that Mendez was involved throughout the duration of the crime and lied repeatedly about his involvement once he was apprehended, all of which suggested Mendez's role was not minor.  The government also noted that Mendez, who bore the burden to show his minor role, had not offered any evidence of others involved in the offense to compare culpability.

---

[1]Most of Mendez's PSI objections were addressed by the probation officer by revising the PSI.  Mendez objected to the factual accuracy of some of the offense conduct in the PSI, specifically, the PSI's (1) statement that the GPS device indicated the location of the container, and (2) failure to include the fact that surveillance video showed at least two other drivers and tractors trailers involved in the theft of the container in North Carolina hours before Mendez took possession of the container in South Carolina.  The revised PSI noted that this dispute was unresolved, but that it did not affect guidelines calculations.  At the sentencing hearing, Mendez informed the court that all objections apart from the minor role reduction had been resolved. Thus, Mendez abandoned these objections.  In any event, the facts stated in this opinion were drawn from the facts Mendez admitted in his plea colloquy.

The district court overruled Mendez's objection, concluding that it was "not persuaded that this defendant's role was minor in comparison to anyone else." The district court noted that Mendez was being held accountable for his own conduct. The district court found that the adjusted offense level was 21, which, with a criminal history category of I, yielded a sentence of 37 months at the low end of the advisory guidelines range.

Mendez asked for an 18-month sentence because his role as truck driver was limited and he participated in the offense to provide financial support for his family. In his sentencing memorandum, Mendez also noted that the stolen goods had been recovered and that his advisory guidelines range would have been substantially lower had it been calculated using the actual loss. Mendez personally addressed the court and explained that he was poor and was driven to commit the offense to support his family.

The government asked for a sentence at the middle or high end of the advisory guidelines range because Mendez had a prior fraud conviction and other arrests for theft, he repeatedly lied to law enforcement during the investigation of the offense, and he had not shown true remorse for his crime.

The district court stated that it had carefully considered the PSI, the parties' memoranda and the information presented during the sentencing hearing, including

Mendez's repeated lies to law enforcement when he was apprehended. The court noted its consideration of the 18 U.S.C. § 3553(a) factors, namely Mendez's history and characteristics, the seriousness of the offense and the need to provide deterrence. The district court declined to impose a downward variance based on Mendez's family circumstances, explaining that "most defendants who come to court have family of some sort and that is not a sufficient basis." The district court imposed a 37-month sentence, at the low end of the advisory guidelines range of 37 to 46 months. Mendez appealed.

## II. DISCUSSION

In reviewing the reasonableness of a sentence, we apply an abuse of discretion standard using a two-step process. United States v. Pugh, 515 F.3d 1179, 1189-90 (11th Cir. 2008). First, we look at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts or failing to adequately explain the chosen sentence. Id. at 1190. Then, we look at whether the sentence is substantively unreasonable under the totality of the circumstances. Id.

### A. Procedural Reasonableness

Mendez argues that his sentence is procedurally unreasonable because the

district court failed to properly calculate the advisory guidelines range when it refused Mendez's request for a minor role reduction pursuant to U.S.S.G. § 3B1.2(b).[2]

Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease if the defendant was a minor participant in any criminal activity. U.S.S.G. § 3B1.2(b). A defendant is a minor participant if he is less culpable than most other participants, but his role cannot be described as minimal. Id. § 3B1.2 cmt. n.5. The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. De Varon, 175 F.3d at 939.

"Two principles guide the district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense." United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006). When the relevant conduct attributed to defendant is the same as his actual conduct, "he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable." Id.; see also De Varon, 175 F.3d at 942-43 (concluding that"when a drug courier's relevant conduct is limited to

---

[2]We review for clear error a district court's determination as to a defendant's role in the offense. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc)

[his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs").

As to the second prong, the district court is permitted to "measure the defendant's conduct against that of other participants" but only "where the record evidence is sufficient." De Varon, F.3d at 934. Furthermore, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." De Varon, 175 F.3d at 944.

Here, the district court did not clearly err in denying Mendez's request for a minor role reduction. Mendez's relevant conduct matched his actual conduct; that is, he was held accountable for receiving and transporting stolen cigarettes valued at $2,129,448. The fact that Mendez received a 2-level enhancement for the sophistication of the offense, pursuant to U.S.S.G. § 2B1.1(b)(12)(B), does not change the result. Mendez's offense was part of an organized scheme to steal the cargo shipment, and Mendez played an integral role in that scheme as evidenced by: (1) the GPS and cell phone data showing Mendez's close proximity throughout the offense; (2) the multiple participants; (3) the collaborative effort to load the stolen container onto Mendez's tractor trailer in South Carolina; and (4) Mendez's deliberate falsification of the bill of lading and driver's logs. This evidence

8

suggests Mendez was more than just a mere driver of the contraband.

Furthermore, although there is some evidence of other participants in the offense, Mendez failed to present evidence of their respective roles such that the district court could make a meaningful comparison and assess relative culpability. The only specific evidence of other participants – the three men who transferred the stolen container to Mendez's tractor trailer at a South Carolina truck stop – does not suggest Mendez was less culpable. Thus, Mendez has not shown that his sentence is procedurally unreasonable.[3]

## B.      Substantive Reasonableness

Mendez also has not shown that his 37-month sentence, at the low end of the advisory guidelines range, is substantively unreasonable. The party who challenges the sentence has the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[4] Although we do not apply a presumption of reasonableness, we

---

[3]Mendez's assertion that the district court treated the advisory guidelines range as presumptively reasonable is not supported by the record. The district court determined Mendez's advisory guidelines range, considered the § 3553(a) factors and the parties' arguments with respect to them and concluded that a downward variance was not appropriate in Mendez's case.

[4]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9)

9

ordinarily expect a sentence within the correctly calculated advisory guidelines range to be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Mendez knowingly drove a tractor trailer from South Carolina to Florida while pulling a stolen container holding over 12 million cigarettes valued at over $2 million. Mendez also falsified trucking records and repeatedly lied to law enforcement after he was caught. Finally, at the crucial times, Mendez was in North Carolina near the manufacturing plant and later the truck yard, which suggests Mendez's involvement in the scheme did not begin in South Carolina and that he was more than just a mere driver. Contrary to Mendez's claims, the district court heard and considered Mendez's arguments in mitigation, including that his motive was to help his family, that he was not one of the masterminds of the scheme and that the actual loss was much less than the intended loss. The district court concluded that these circumstances did not warrant a sentence below the advisory guidelines range of 37 to 46 months. Considering the totality of the circumstances, we cannot say the district court abused its discretion in imposing a 37-month sentence.

**AFFIRMED.**

---

the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).