[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14031
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-60059-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE CAICEDO-ROSERO,
a.k.a. El Medico,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2010)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Jorge Caicedo-Rosero appeals his sentence of 135 months for twice

conspiring to import 5 kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B). On appeal, Caicedo-Rosero first argues that the district court erred by denying him a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b). Second, Caicedo-Rosero argues that his total sentence was substantively unreasonable in light of 18 U.S.C. § 3553(a). Upon review of the record and consideration of the parties' briefs, we affirm.

## I.

In 2004, the Southern District of Florida ("2004 case"), a federal grand jury indicted Caicedo-Rosero on: (1) one count of conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B) ("Count One"); (2) one count of aiding and abetting the importation of five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B) and 18 U.S.C. § 2 ("Count Two"); and (3) one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) ("Count Three").[1]

In 2007, also in the Southern District of Florida ("2007 case"), a federal grand jury indicted Caicedo-Rosero and codefendant Marco Tulio Cardona-Rendon on: (1) one count of conspiracy to import five kilograms or more of

---

[1] CM/ECF for the S.D. of Fla. no. 1:04-cr-20682

cocaine into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B) ("Count One"); (2) one count of importation of five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B) and 18 U.S.C. § 2 ("Count Two"); and (3) one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) ("Count Three").[2]

Caicedo-Rosero pled guilty to Count One in both the 2004 and 2007 cases. The remaining counts of both indictments were subsequently dismissed. Caicedo-Rosero also signed factual proffers relating to both cases. Doc. 64. In the factual proffer for the 2004 case, Caicedo-Rosero admitted that he conspired with others to import cocaine from Colombia into the United States. Specifically, he admitted to meeting with a confidential source ("CS") and agreeing to conceal cocaine belonging to other co-conspirators on a ship sailing from Colombia to Miami, Florida. In the factual proffer for the 2007 case, Caicedo-Rosero admitted to conspiring with Cardona-Rendon and others to import cocaine from Colombia into the United States. Specifically, Caicedo-Rosero caused a bag containing what he knew to be 20 kilograms of cocaine to be concealed in a shipping container on a boat sailing to Florida. He also informed the CS that the cocaine was in the

---

[2] CM/ECF for the S.D. of Fla. no. 07-cr-60059

specified container.

The 2004 and 2007 cases were consolidated for purposes of the plea hearing and sentencing. According to the presentence investigation report ("PSI"), Caicedo-Rosero's illegal conduct for the 2004 case occurred from August 2002 to January 2003, during which time Caicedo-Rosero conspired with others to import cocaine into the United States from Colombia. In 2002, Caicedo-Rosero met with a CS in Colombia, who asked him to help conceal cocaine on a ship sailing from Colombia to Miami, Florida. Caicedo-Rosero subsequently met with co-conspirators, two of whom he knew only as "Juampi" and "Isabel," and agreed to conceal their cocaine on a ship. In December 2002, Caicedo-Rosero caused two duffle bags, containing a total of 150 kilograms of cocaine, to be concealed in a shipping container that was placed on board a ship that was docked in Buenaventura, Colombia, and that Caicedo-Rosero knew would be sailing to Miami, Florida. The cocaine belonged to Caicedo-Rosero's co-conspirator, Carlos Felipe Toro-Sanchez, also known as Felipe Montoya. One of the duffel bags also contained nine kilograms of heroin. On January 3, 2003, the ship arrived in Miami with the drugs. However, because members of the conspiracy were unable to unload the drugs in Miami, the drugs sailed to Staten Island, New York where U.S. Customs agents subsequently seized them.

Regarding the conduct for the 2007 offense, the probation officer noted that from June 2006 through January 2007, a Drug Enforcement Administration CS had been in contact with Caicedo-Rosero to arrange for cocaine to be shipped from Colombia to South Florida. Caicedo-Rosero agreed to send a test shipment of 20 kilograms of cocaine to the CS in Port Everglades, Florida, and told the CS that Cardona-Rendon would be the recipient of the shipment. On January 7, 2007, two undercover officers met with Cardona-Rendon to discuss the details of the shipment, including where and how the cocaine would be smuggled and what portion the undercover officers would receive. On January 8, 2007, law enforcement officials searched the vessel and the container where Caicedo-Rosero said the cocaine shipment would be located. The officials seized 20 kilograms of cocaine. On August 7, 2007, Caicedo-Rosero was arrested in Colombia and held at the Combita Prison until his extradition to the United States on January 5, 2009.

In assessing Caicedo-Rosero's role, the probation officer noted that he was the "supplier of the cocaine" in the conspiracies underlying both the 2004 and 2007 cases. The probation officer noted that Cardona-Rendon was the "transporter" in the conspiracy underlying the 2007 case.

For the 2004 case, the probation officer determined that Caicedo-Rosero was responsible for 150 kilograms of cocaine and 9 kilograms of heroin. For the

5

2007 case, Caicedo-Rosero was held accountable for 20 kilograms of cocaine as a result of his underlying conduct. The probation officer assigned a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1). The probation officer then recommended a two-level reduction, because Caicedo-Rosero met the safety-valve criteria set forth in U.S.S.G. § 5C1.2(a)(1)–(5). *See* U.S.S.G. § 2D1.1(b)(11). After a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), the probation officer calculated Caicedo-Rosero's new base offense level at 33. Based on a total base offense level of 33 and a criminal history category of I, Caicedo-Rosero's advisory guideline imprisonment range was 135 to 168 months. The probation officer also indicated that the statutory maximum term of imprisonment for Caicedo-Rosero's offenses was life.

During the sentencing hearing, Caicedo-Rosero argued that he was not the source or "supplier" of the cocaine because he only facilitated the transportation of drugs actually owned by Felipe Montoya. Caicedo-Rosero contended that he had a minimal role in the conspiracy and was entitled to a two-level reduction under U.S.S.G. § 3B1.2(b). Caicedo-Rosero next requested that the court sentence him to no more than 108 months of imprisonment based on the § 3553(a) factors.

The sentencing court explained that, while Caicedo-Rosero was not the owner of the drugs, he was the "supplier," a term that has "a much broader

6

definition than owner." Tr. 10. The court, therefore, denied Caicedo-Rosero's motions to remove his description as a "supplier" in the PSI and to grant him a minor-role reduction. Tr. 10, 12. The government recommended a sentence at the low-end of the guidelines range. The court accepted the government's recommendation and sentenced Caicedo-Rosero to 135 months of imprisonment. This timely appeal followed.

## II.

On appeal, Caicedo-Rosero argues that the district court erred in refusing to grant him a sentence reduction under U.S.S.G. § 3B1.2 because he was a minor participant in the offenses. Caicedo-Rosero contends that the court incorrectly labeled him as a "supplier," when his only role was to give traffickers the names of other individuals who could load and unload the drugs. Further, Caicedo-Rosero argues that his role was clearly minor given the broad scope of the criminal conspiracy in this case. After review of the record, we find that these arguments have no merit.[3]

"[A] district court's determination of a defendant's role in the offense is a

---

[3] For the first time on appeal, Caicedo-Rosero argues that the district court failed to resolve disputed facts regarding his role in the offense. If a defendant does not object to an error before the district court, this Court reviews only for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). To prove plain error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *Id.* (citation omitted). We find that the district court did not plainly err on this issue.

finding of fact to be reviewed only for clear error." *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of the downward adjustment "bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *Id.* at 939. In evaluating this evidence, "the district court has considerable discretion in making this fact-intensive determination." *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002).

The Sentencing Guidelines permit a court to decrease a defendant's offense level by two levels if it finds the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). We have set out two elements that inform the sentencing court's determination about a defendant's role in an offense. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) (per curiam) (citation omitted). First, when determining a defendant's role in the offense, a district court "must measure the defendant's role against the relevant conduct for which [he] has been held accountable." *De Varon*, 175 F.3d at 940. "In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. Thus, in making this assessment, "a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing." *Id.* at

8

941–42. However, a district court may legitimately conclude that a defendant did not have a minor role in conspiring to transfer drugs where the defendant was only held accountable for the drugs that he admitted to conspiring to transport. *See Alvarez-Coria*, 447 F.3d at 1343 (holding that the district court did not plainly err in refusing to grant the defendant a minor role reduction where the defendant was held accountable only for admitting to the location and transport of drugs to Atlanta, Georgia).

Second, the court "may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." *De Varon*, 175 F.3d at 944. "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *Id.* A district court is not required to compare the defendant's conduct with that of their codefendants if it is clear that the defendant's role matched the conduct attributed to him at sentencing. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1321, n.25 (11th Cir. 2010), *cert. denied*, 130 S. Ct. 2121, *and cert. denied*, 130 S. Ct. 2123.

Here, the court did not clearly err in finding that Caicedo-Rosero's role was not minor in the offense. With respect to the first element of the *De Varon* analysis, the district court correctly concluded that the PSI held Caicedo-Rosero

accountable for 150 kilograms of cocaine and 9 kilograms of heroin in the 2004 case and for 20 kilograms of cocaine in the 2007 case. The record shows that Caicedo-Rosero signed factual proffers in which he admitted to conspiring to import these drugs. Subsequently, the court sentenced Caicedo-Rosero using a guideline offense level corresponding to those amounts. Because Caicedo-Rosero's relevant conduct was limited to the drugs that he admitted to conspiring to transport, the district court legitimately concluded that he did not play a minor role in the importation of those drugs.

Caicedo-Rosero's argument also fails under the second element of the *De Varon* analysis. Caicedo-Rosero presented no evidence to show that his responsibilities in importing the drugs were less important than those who off-loaded and transported the drugs. In fact, the record suggests that Caicedo-Rosero coordinated the actions of some of his co-conspirators by ensuring that the cocaine was packed in a container on a boat in Colombia and informing co-conspirators in the United States where the cocaine was located. *See* PSI ¶¶ 15–17, 21; *see also Alvarez-Coria*, 447 F.3d at 1343–44 (holding that a defendant was not less culpable than his codefendants where the defendant, among other things, coordinated some of his co-conspirators' movements). In regard to the 2007 case, the record shows that Caicedo-Rosero arranged for the cocaine to be transferred

from Colombia to Florida, and that Cardona-Rendon arranged to take possession of the cocaine in Florida for distribution. *See* PSI ¶¶ 21-30. Therefore, the record indicates that Caicedo-Rosero was at least as culpable as Cardona-Rendon. Although the record shows that others actually owned the cocaine being imported, and were thus perhaps higher in the conspiracy, this evidence does not demonstrate that Caicedo-Rosero was entitled to a minor-role reduction because it is possible that no one in the conspiracy was a minor or minimal participant. *See DeVaron*, 175 F.3d at 944.

Further, Caicedo-Rosero argues that he should have received a minor-role reduction because he had only a small role in the vast Montoya drug organization. However, Caicedo-Rosero was only held responsible for the two conspiracies relating to the 2004 and 2007 cases, and this Court's precedent forecloses his argument that he had a minor role based upon criminal conduct for which he was not held accountable at sentencing and about which he presented no evidence. *See id.* Accordingly, Caicedo-Rosero fails to show that his role was minor when compared to that of his co-conspirators.

**III**.

Caicedo-Rosero also contends that his 135 month sentence is substantively unreasonable in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738

11

(2005), and the sentencing factors in 18 U.S.C. § 3553(a). Specifically, Caicedo-Rosero argues that in order to prevent sentencing disparity and to ensure that the sentence was no greater than necessary, the court failed to adjust his sentence based on the inhumane conditions he experienced in the Combita prison. We find that this argument is also without merit.

"We review the reasonableness of a sentence through a two-step process using a deferential abuse-of-discretion standard."[4] *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009) (citations omitted). "First we look at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines range as mandatory, or failing to consider the 18 U.S.C. § 3553(a) factors." *Id*. (citation omitted).

"Second, we examine whether the sentence is substantively reasonable." *Id.* (citation omitted). A sentence is substantively unreasonable "if it does not achieve the purposes of sentencing stated in § 3553(a)." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation omitted). Pursuant to 18 U.S.C. § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than

---

[4] Although the government contends that we should review Caicedo-Rosero's challenge to the reasonableness of his sentence for plain error, we need not decide whether the plain error standard is applicable because Caicedo-Rosero's argument fails under any review.

necessary, to comply with the purposes" of sentencing listed in § 3553(a)(2).[5] 18

U.S.C. § 3553(a). However, "when the district court considers the factors of

section 3553(a), it need not discuss each of them" individually. *United States v.*

*Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). "[A]cknowledgment by

the district court that it has considered the defendant's arguments and the factors in

section 3553(a) is sufficient under *Booker*." *Id*.

"[W]hen the district court imposes a sentence within the advisory Guidelines

range, we ordinarily will expect that choice to be a reasonable one." *Id.* at 788.

"[T]he party who challenges the sentence bears the burden of establishing that the

sentence is unreasonable in the light of both [the] record and the factors in section

3553(a)."[6] *Id.*

We conclude that Caicedo-Rosero has not met his burden. During the

sentencing hearing, the court explicitly mentioned that it considered the § 3553(a)

---

[5] Section 3553(a) provides that the district court must consider, "the nature and circumstances of the offense," the "history and characteristics of the defendant," the need for the sentence imposed "to reflect the seriousness of the offense," to "promote respect for the law," to "afford adequate deterrence to criminal conduct," protection of the "public from further crimes of the defendant," and the "need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(1)–(2),(6).

[6] Caicedo-Rosero also argues that the district court clearly erred in making the factual determination that his living conditions in Combita Prison were equivalent to those found in local prisons. However, the record shows that the court never made such a factual determination. The sentencing judge merely stated that he had toured prisons in South America, and he did not think those prisons were significantly worse than a local jail. Tr. 20.

factors prior to imposing the sentence. The transcript reveals that the district court spoke about the "need to deter future criminal activity" and that a sentence "imposed within and at the bottom of the advisory guideline range" was appropriate. Tr. 25. The court also considered Caicedo-Rosero's personal circumstances, particularly the time he spent in prison in Colombia. Tr. 20. The court recommended to the Bureau of Prisons that Caicedo-Rosero receive one day of credit for each day he was incarcerated in Colombia. Tr. 20, 25–26. Further applying the section 3553(a) factors, the court considered the nature and circumstances of Caicedo-Rosero's offenses. Tr. 5–10. In light of the record, we conclude that the district court appropriately considered the section 3553(a) factors. Accordingly, we find that the sentence was not substantively unreasonable, and we affirm.

**AFFIRMED.**