[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12638
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:08-cr-00407-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES VARNEDOE,
a.k.a. Rider,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 2, 2011)

Before EDMONDSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Charles Varnedoe appeals his 188-month sentence for

conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. On appeal, Varnedoe argues that the district court clearly erred by denying him a minor role reduction, pursuant to U.S.S.G. § 3B1.2. After review, we affirm.[1]

A defendant receives a two-level reduction in his offense level if he was a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is less culpable than most other participants, but his role could not be described as minimal. U.S.S.G. §3B1.2 cmt. n.5. The defendant must prove his minor role in the offense by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

Whether to apply a minor role reduction "is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). "Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense." United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006). When the relevant conduct attributed to the

---

[1]A district court's determination of a defendant's role in the offense is a finding of fact that we review for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

defendant is the same as his actual conduct, "he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable." Id.; see also De Varon, 175 F.3d at 942-43 (concluding that "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs").

As to the second prong, the district court is permitted to "measure the defendant's conduct against that of other participants" but only "where the record evidence is sufficient." De Varon, F.3d at 934. Furthermore, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." Id. at 944.

On the record before us, the district court's refusal to give Varnedoe a two-level minor-role reduction was not clear error. In calculating Varnedoe's offense level, the district court held Varnedoe accountable for between 50 and 150 kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(2). Despite Varnedoe's contentions, he was not held accountable for the conduct of his co-conspirators. According to paragraphs 8 and 9 in the Presentence Investigation Report ("PSI"): (1) in early 2007, Varnedoe made at least three trips to a cocaine supplier in Texas

3

to get approximately 20 kilograms of cocaine, which he then hid in secret compartments of his van for the return to Jacksonville; and (2) in May 2007, law enforcement stopped Varnedoe in his van and found 10 kilograms of cocaine. Thus, at a minimum, Varnedoe personally transported 70 kilograms of cocaine.[2]

Furthermore, the record does not support Varnedoe's claim that he was merely a drug courier for Christopher Keith Robinson. Varnedoe introduced Robinson to the Texas cocaine supplier and owned the van equipped with hidden compartments that he used to transport multiple large shipments of cocaine from Texas to Florida. On several occasions, Robinson and other conspirators visited Varnedoe's residence to drop off or pick up either cocaine or money. When Varnedoe's van was stopped in May 2007, in addition to 10 kilograms of cocaine, Varnedoe was transporting $266,969 in cash, which was payment for another 10 kilograms of cocaine. During a search of Varnedoe's residence, law enforcement

---

[2]The PSI found that Varnedoe was responsible for 215 kilograms of cocaine. Varnedoe objected to the PSI's drug quantity, arguing that the trial testimony did not clearly establish that Varnedoe transported that amount. After the parties read from portions of the trial transcript, the district court sustained Varnedoe's objection and found that Varnedoe was responsible for between 50 and 150 kilograms of cocaine. Varnedoe did not object to the district court's drug quantity finding or specifically challenge the cocaine amounts in paragraphs 8 and 9 of the PSI that were attributed directly to him. Moreover, the trial testimony was sufficient to support a finding that Varnedoe personally transported at least 50 kilograms of cocaine during the course of the conspiracy. See United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989) (explaining that the sentencing court may rely upon evidence heard at trial as well as undisputed statements in the PSI).

found another $131,930 in his safe.

These activities indicate that Varnedoe was aware of and participated in the workings of the larger drug conspiracy and was not merely a drug mule. Indeed, the undisputed facts suggest Varnedoe was a trusted and important member of Robinson's drug conspiracy. Not only did Varnedoe transport large amounts of drugs and money, he stored them at his residence for other participants in the drug conspiracy.

Moreover, Varnedoe's conduct was not less culpable than most other participants in the drug conspiracy. Even if Varnedoe was less culpable than Robinson, he was at least as culpable as the other identified participants, Robert Donnell Marshall and Ronald Wilson, and arguably more so. Marshall and Wilson accompanied Robinson on several trips and distributed the cocaine Robinson provided them. Unlike Varnedoe, Marshall and Wilson did not own vans equipped with hidden compartments, did not provide a residence for picking up, dropping off and storing drugs and money, and did not introduce Robinson to a cocaine source. Wilson once saw Robinson pay Varnedoe a $30,000 courier fee, but Robinson paid Wilson only $2,500 and a few ounces of cocaine for the three trips he took with Robinson.

Given these facts, the district court did not clearly err when it found that

5

Varnedoe played more than a minor role in the drug conspiracy.

**AFFIRMED.**