[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14069
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20259-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RENET BLANC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 21, 2016)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Renet Blanc appeals his total 82-month sentence for conspiracy to use unauthorized access devices with intent to defraud, in violation of 18 U.S.C. § 1029(b)(2) (Count 1); trafficking and use of counterfeit access devices with intent to defraud, in violation of 18 U.S.C. § 1029(a)(2) (Count 2); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 5). After review, we affirm.

## I.  BACKGROUND FACTS

According to the undisputed facts, Blanc and his brother, Ronet Blanc, conspired with each other to traffic in and use personal identifying information, including social security numbers, to file false claims for federal unemployment benefits and Social Security retirement benefits and false tax returns.  As a result of false claims generated by both Blanc and his brother, unemployment insurance funds were deposited into bank accounts controlled by the brothers.  The brothers also withdrew funds from these bank accounts.

During a search of the residence the brothers shared, federal agents found: (1) in Blanc's bedroom, papers, ledgers, and other documents containing the names, dates of birth, and social security numbers of over 50 individuals that he was not authorized to possess, and Internal Revenue Service wage and tax statements, patient records, and handwritten personal identifying information for at least 20 individuals; and (2) in his brother's bedroom, a computer containing the

2

names, social security numbers, and dates of birth for over 3,000 individuals that he was not authorized to possess. In all, the agents found personal identifying information for at least 4,250 victims.

## II. GUIDELINES ISSUES

On appeal, Blanc challenges several of the sentencing court's guidelines calculations as to Counts 1 and 2, including the loss amount and number of victims attributed to him and the denial of his request for a minor role reduction.[1] For the reasons that follow, we find no error in these guidelines rulings.[2]

The district court did not clearly err in concluding that the full intended loss was reasonably foreseeable and thus attributable to Blanc as relevant conduct. See United States v. Moran, 778 F.3d 942, 974 (11th Cir.), cert denied sub nom. Huarte v. United States, 136 S. Ct. 268 (2015); U.S.S.G. §§ 1B1.3(a)(1)(B), 2B1.1 cmt. n.3(A). Although the district court did not make individualized findings regarding the scope of Blanc's participation in the conspiracy, the undisputed facts in the

---

[1]Blanc also argues that the district court erred in increasing his offense level by two levels under the vulnerable victim enhancement in U.S.S.G. § 3A1.1(b)(1), but the district court did not impose this enhancement.

[2]We review the district court's factual findings under the Sentencing Guidelines for clear error and its legal interpretation of the Guidelines de novo. United States v. Williams, 340 F.3d 1231, 1238-39 (11th Cir. 2003). The district court's determinations as to the loss amount, the number of victims, and the defendant's role are factual findings reviewed for clear error. See United States v. Barrington, 648 F.3d 1178, 1197, 1200 (11th Cir. 2011); United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013).

presentence investigation report ("PSI") support the district court's attribution of loss.  See United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002).

The undisputed facts in the PSI established that Blanc's co-conspirator was his brother, with whom he shared a residence.  The materials from the conspiracy were found in both brothers' bedrooms.  Furthermore, the funds generated by the conspiracy, regardless of which brother was submitting the claim, were deposited into accounts controlled by both brothers, and both brothers withdrew funds generated by the conspiracy from at least one shared bank account.  Under the circumstances, the district court did not err in concluding that Blanc should be held accountable for the full intended loss amount.

For similar reasons, the district court did not err in concluding that Blanc was accountable, as relevant conduct, for the full number of victims, including those whose identifying information was found in his brother's bedroom.  Blanc did not dispute the statements in his PSI that: (1) "at least 4,250 victims' [personal identifying information was] found during the search" of the brothers' shared residence; and (2) "there were at least 4,250 victims whose personal identity was compromised as a result" of the brothers' actions although "they did not suffer any monetary loss."  As mentioned above, materials for the brothers' conspiracy were found in the brothers' shared residence, regardless of which specific room the

4

material was found.  Each type of fraud that was part of the conspiracy was committed by both brothers, conspiring together.

While Blanc argues (for the first time on appeal) that the victims did not suffer "substantial financial hardship," the 2014 version of § 2B1.1's 6-level multiple victim enhancement used to calculate Blanc's offense level merely requires "250 or more victims," and does not require the victims to have suffered substantial financial hardship.  See U.S.S.G. §§ 1B1.11(a), 2B1.1(b)(2)(C) & cmt. n.4(E)(ii) (stating that in cases involving means of identification, a victim includes "any individual whose means of identification was used unlawfully or without authority").

The district court also did not err in concluding that Blanc did not qualify for a minor role reduction under U.S.S.G. § 3B1.2.  Blanc had the burden to prove he was entitled to the reduction, see United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006), but failed to show he was substantially less culpable than his brother.  See U.S.S.G. § 3B1.2 cmt. n.3(A), n.4 & n.5.  Both brothers used the personal identifying information of others to submit false claims electronically. The funds received by the conspiracy, regardless of which brother submitted the false claim, were deposited into accounts controlled by both brothers.  And both brothers withdrew funds using ATM cards.  The fact that Blanc had less personal identifying information in his bedroom and withdrew less money does not prove

that his role was minor. See United States v. De Varon, 175 F.3d 930, 944 (11th Cir. 1999) (en banc) (explaining that it is possible to have no minimal or minor participants in a conspiracy). In the absence of any other information, we cannot say that the district court erred in its ruling on the role issue.

## III.  SUBSTANTIVE REASONABLENESS

We review the reasonableness of a sentence under the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively unreasonable under the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[3] We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1191 (quotation marks omitted).[4] The party challenging the sentence bears the burden to

---

[3]Apart from the guidelines calculation issues already addressed, Blanc does not claim any procedural error occurred at his sentencing or argue that his sentence is procedurally unreasonable.

[4]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission;

6

show that it is unreasonable in light of the record and the § 3553(a) factors.  Id. at 1189.

At sentencing, the district court calculated an advisory guidelines range of 70 to 87 months' imprisonment as to Counts 1 and 2.  The district court, after considering the § 3553(a) factors, imposed concurrent 58-month sentences on Counts 1 and 2, below that advisory guidelines range.  The district court explained that Blanc had received the 12-month downward variance to avoid having the same prison sentence as his brother and cited the mitigating facts that Blanc profited less from the scheme than his older brother and had less of the personal identifying information in his bedroom.[5]  As to Count 5, the district court imposed the mandatory minimum 24-month sentence, required by statute to be served consecutive to Counts 1 and 2.

Blanc does not challenge his mandatory minimum consecutive 24-month sentence on Count 5.  Thus, Blanc's substantive reasonableness argument pertains solely to his concurrent 58-month sentences on Counts 1 and 2, which were the result of a 12-month downward variance.  Specifically, Blanc contends that for

---

(9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

[5]The district court sentenced both brothers on the same day, and initially sentenced Blanc to a 60-month sentence on Count 1, a concurrent 70-month sentence on Count 2, and a consecutive 24-month sentence on Count 5, for a total sentence of 94 months.  However, when the district court next sentenced Blanc's brother and realized the two brothers had the same advisory guidelines range for Counts 1 and 2, the district court decided to re-sentence Blanc to concurrent 58-month sentences on Counts 1 and 2 to reflect the mitigating facts noted above.

Counts 1 and 2, he should have received a downward variance to a sentence between 35 and 38 months, the advisory guidelines range he would have had if the district court had sustained all of his guidelines objections.

We conclude that Blanc's concurrent 58-month sentences on Counts 1 and 2 are substantively reasonable. As the district court noted, Blanc's crimes involved taking "thousands upon thousands" of dollars from government-run organizations that provide social benefits. The district court explained that South Florida has an epidemic of identity theft crimes and that Blanc's sentence needed to deter not only Blanc, but others as well, which ordinarily requires a sentence within the advisory guidelines. However, to avoid Blanc receiving the same sentence as his older, more-culpable brother, the district court gave Blanc a 12-month downward variance. Specifically, the district court stressed that, while Blanc was not entitled to a minor role reduction, he was the younger brother (only 20 years old at the time), had profited less than his older brother, and his older brother's computer had "far more information than" was found in Blanc's bedroom. Under the totality of the circumstances, we cannot say the district court's refusal to vary further downward was an abuse of discretion.

**AFFIRMED.**

8