**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas REED, Defendant–Appellant.**

No. 88–7653.

United States Court of Appeals,
Eleventh Circuit.

Sept. 29, 1989.

Rehearing and Rehearing In Banc
Denied Nov. 8, 1989.

---

William J. Baxley, William J. Baxley, P.C., Birmingham, Ala., W. Terry Travis, George L. Beck, Montgomery, Ala., for defendant-appellant.

D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and YOUNG *, Senior District Judge.

GEORGE C. YOUNG, Senior District Judge:

Thomas Reed, a member of the House of Representatives of the State of Alabama, was charged with two counts of Hobbs Act[1] violations (Counts One and Two) and three Travel Act[2] violations (Counts Three, Four and Five). A jury trial held in Mobile, Alabama, resulted in a verdict of guilty on Counts Two and Four.[3]

In Count Two the government charged that Reed, between January 1, 1986 and December 31, 1986, extorted a bribe of $10,000 from Woodson and Jessie Lea Chesser, to use his official position and influence with the Board of Pardon and Parole of the State of Alabama to obtain a five-year, six-month advance on the parole consideration hearing date of Anthony D.

Chesser. Anthony Chesser is the son of Woodson and Jessie Lea Chesser.

Count Four charged that Reed, on or about August 6, 1986, caused Bobby Gene Chesser, who is the brother of Woodson Chesser and the uncle of Anthony Chesser, to travel in interstate commerce from Columbus, Georgia, to Tuskegee, Alabama, to distribute the proceeds of bribery.

## BACKGROUND

The evidence adduced by the government established that Anthony Chesser was convicted in the State of Alabama of the murder of his wife and sentenced to imprisonment for forty years. Reed was a member of the Prison Oversight Committee for the Alabama Legislature.

Anthony Chesser's first parole consideration hearing was scheduled for July 16, 1994, ten years after the beginning of his incarceration. Bobby Gene Chesser testified that he had a conversation with Reed in early 1986 during which Chesser asked for Reed's help in getting an earlier release date for Chesser's nephew Anthony. Chesser testified that Reed said he would check into it and get back with Chesser.

Subsequently, according to Bobby Gene Chesser, Reed said that he could help but that it would cost $10,000, although Reed never specifically said for what purpose the money would be used. Thereafter, on July 7, 1986, the Board of Pardon and Parole reset Anthony Chesser's parole consideration date from July 16, 1994 to July 19, 1989.

Woodson and Jessie Lea Chesser testified that on July 8 and 9, 1986, they took from their bank account and borrowed sufficient funds to raise $10,000 in cash, which Jessie Lea Chesser took to Bobby Gene Chesser. Bobby Gene Chesser testified that he drove from Columbus, Georgia to Reed's residence in Tuskegee, Alabama, and gave Reed the $10,000. Bobby Chesser's testimony of the trip to Alabama was

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

**1.** 18 U.S.C. § 1951

**2.** 18 U.S.C. § 1952

**3.** *See* note 4, *infra,* and accompanying text.

supported by the testimony of Raymond E. Reagan, who stated that he accompanied Bobbie Gene Chesser to Tuskegee and that Chesser showed him an envelope containing a large amount of money during the trip. Reagan testified that Chesser asked him to remain in the car when they arrived at a residence in Tuskegee. Reagan further testified that Chesser carried the envelope containing the money in his hip pocket as he walked to the front door of the residence, and that Reed came to the door. Reagan watched Chesser enter the house with Reed. Reagan testified that the two men emerged approximately twenty minutes later, and that he never saw the envelope containing the money again.

Thereafter, Bobby Gene Chesser and Reed met with James Morrison, Warden at Staten Prison, seeking a work release for Anthony Chesser. The warden advised Reed and Chesser that the guidelines precluded a work release prior to eighteen months before the parole date. Accordingly, even under the new parole hearing date of July 19, 1989, Anthony Chesser would have to wait another six months before he would become eligible for the work release program.

Reed then met with Wilby Wallace, Jr., Deputy Commissioner for the Department of Corrections of the State of Alabama, seeking to have the parole consideration hearing scheduled six months earlier. Wallace and Reed went to the offices of the parole board, where they met with the executive director of the board, Warren D. Gaston. Gaston testified that on August 4, 1986, he "visited the board" which was then in session, and that the Anthony Chesser parole hearing date was reset for January of 1989.

After the August 4 session, one of the three members of the parole board, Jack D. Shows, examined Anthony Chesser's file and became concerned about the rescheduling of the parole hearing dates in view of the short period of time in which Chesser had been in prison and the serious nature of the offense for which he had been convicted. As a result, on August 8, 1986, Shows and another member of the parole board rescinded the changes, and the parole hearing date was moved back to July of 1994. When Bobby Gene Chesser learned that the earlier date had been rescinded he called Reed to inquire as to what had gone wrong. Reed said that he would check on it and let Chesser know something.

Thereafter, Bobby Gene Chesser demanded his money back from Reed and on August 28, 1986, Reed traveled to Columbus, Georgia and gave Chesser $8,000 in cash. Unbeknownst to Reed, Chesser made a tape recording of the conversation that took place at this meeting. Subsequently, according to Chesser, Reed returned the $2,000 balance of the $10,000 payment. These monies were given to Jessie Lea Chesser, who deposited them in her bank account and paid off the loans which had been taken out the previous month.

Parole board member Shows testified that on April 14, 1988, he had a call slip at his office from Bobby Gene Chesser. As a result, he called the office of the Federal Bureau of Investigation [FBI] and FBI agent Pat Mitchell came to Shows' office. Shows returned Chesser's call and they subsequently met at a restaurant in Montgomery, Alabama.

The main topic of the conversation between Shows and Chesser concerned a tape recording which Bobby Gene Chesser turned over to Shows at the time, along with a tape cassette player. This recording was the one that Bobby Gene Chesser had taken of his conversation with Reed at the time Reed returned the $8,000 to Chesser.

Prior to meeting with Chesser, Shows had been wired with a transmitter and a recording device by the FBI. After the meeting with Chesser, Shows met with FBI agents Mitchell and Long at Shows' home, where Shows turned over the tape and recorder to agent Long.

On May 11, 1988, Shows once again was wired by the FBI and met with Bobby Gene Chesser at the restaurant. Agents Mitchell and Long joined the other two, at which time Bobby Gene Chesser agreed to cooperate with the FBI agents.

As noted above, the jury convicted Reed of Counts II and IV of the indictment. Reed raises the following six claims on appeal: (1) the prosecutor made a prejudicial remark during his opening statement; (2) a material variance existed between the dates alleged in the indictment and proof at trial; (3) the trial court erred in denying Reed's motion for a new trial on basis of newly discovered evidence; (4) the trial court erred in admitting a tape recording into evidence; (5) the trial court erred in admitting hearsay testimony; and (6) the deliberating jury possessed a transcript of a tape recording which was not admitted into evidence. We will address those issues *seriatim*.

## ISSUES

### I. Prosecutor's Remarks

The first point on appeal arises from a remark made by the prosecutor concerning an incident not related to this trial in which Reed attempted to remove a confederate flag from the dome of the Alabama State Capitol in Montgomery. Prior to the beginning of the trial of the instant case, the trial judge cautioned the attorneys not to mention the flag incident, which had received media attention.[4] Nevertheless, during opening statement, the prosecuting attorney told the jurors that "[t]his case has nothing to do with other activities or the confederate flag or anything else. . . ." Defense counsel immediately objected and the judge instructed the jury to disregard the prosecutor's statement. The court then denied Reed's motion for a mistrial.

Reed argues that the prosecutor's remark was inflammatory and prejudicial and that the trial court erred in failing to grant Reed's motion for a mistrial based upon the

remark. The United States concedes that, in view of the trial judge's admonition to counsel about the flag incident, the prosecutor should not have made the statement. The United States maintains, however, that the challenged comment was not prejudicial.

Prosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused. *United States v. Odom,* 858 F.2d 664 (11th Cir. 1988); *United States v. Collins,* 779 F.2d 1520 (11th Cir.1986). A prejudicial remark may be rendered harmless by a curative instruction. *United States v. Lichenstein,* 610 F.2d 1272 (5th Cir.) cert. denied, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). In the instant case the trial judge immediately issued a curative instruction and the prosecutor thereafter desisted from any such remarks or references.

Upon a review of the entire record, we conclude that Reed was not prejudiced by the prosecutor's remark. Thus, the trial court properly denied Reed's motion for a mistrial.

### II. Variance Between Dates

In his second point on appeal, Reed asserts that the trial court erred in failing to grant his motion for a new trial based on his contention that a material variance existed between the allegations of the indictment and the proof elicited at trial.[5] In Count IV of the indictment, the government alleged that, "on or about the 6th day of August, 1986," Reed caused Bobby Gene Chesser to travel in interstate commerce to distribute the proceeds of bribery.[6] Dur-

---

**4.** The district court judge granted Reed's Motion to Transfer Venue from the Middle District of Alabama based upon news media reports concerning the flag incident. The case was transferred from the Montgomery Division of the Middle District to the Southern District of Alabama in Mobile for trial. During voir dire, the judge told the attorneys that he did not want "anything to come out in the trial about this flag business, because it has absolutely nothing to do with the issues in the case."

**5.** The denial of a motion for new trial will not be reversed absent an abuse of discretion. *See* Issue III, *infra.*

**6.** Reed also contends that the time span alleged in Count II, the Hobbs Act count, renders the count vague. Count II alleged that, between January 1 and December 31, 1986, Reed violated section 1951 of Title 28, United States Code, by delaying and affecting interstate commerce by means of extortion. While this count is not "the model of precision," the allegation is not so

ing opening statement, the prosecuting attorney stated that the government would show that the extortion demand and payment took place on July 9 and 10, 1986. Jessie Lea Chesser subsequently testified that she took the cash to Bobby Gene Chesser on the day she obtained it from the finance companies. Bobby Gene Chesser testified that he took the money to Tuskegee and gave it to Reed the same day. As previously noted, Raymond Reagan testified that he accompanied Bobby Gene Chesser to Tuskegee when Chesser met with Reed. None of the witnesses were certain about the date of the payment, and the only evidence tending to establish the date was the passbook and loan documents,[7] which showed that the withdrawal and loans were made on July 9, 1986.

■ When the government charges that an offense occurred "on or about" a certain date, the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment. *United States v. Creamer,* 721 F.2d 342 (11th Cir. 1983). Proof of a date reasonably near the specified date is sufficient. *United States v. Champion,* 813 F.2d 1154 (11th Cir. 1987); *United States v. Grapp,* 653 F.2d 189, 195 (5th Cir. Unit A, 1981). Ordinarily, a variance between the date alleged and the date proved will not trigger reversal as long as the date proved falls within the statute of limitations and before the return of the indictment. *United States v. Harrell,* 737 F.2d 971, 981 (11th Cir.1984), *cert. denied,* 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985). The fact that an alibi defense is advanced does not render the time a material element of a criminal offense. *Creamer,* 721 F.2d at 343.

■ Two purposes are served by the requirement that the allegations of the indictment and the proof at trial correspond: (1) the defendant is properly notified of the charges so that he may present a defense; and (2) the defendant is protected against the possibility of another prosecution for the same offense. *See Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).[8]

■ We find no impermissible variance in the instant case. The indictment set forth the material allegations of the offenses charged and specifically stated that Reed caused Bobby Gene Chesser to travel from Georgia to Alabama to distribute the proceeds of bribery. Thus, the substance of the testimony of Bobby Gene Chesser and Raymond Reagan regarding Bobby Gene Chesser's travel to Alabama could not have substantially prejudiced Appellant through surprise. Reed was apprised on the first day of trial the government intended to prove a date that occurred approximately one month earlier than the dates alleged in the indictment.[9] Reed does not contend that he was denied the opportunity to cross-examine all witnesses who testified as to when the act occurred. There is nothing to indicate that differences between the dates in the indictment and the notice of the charges undermined Appellant's right to proper notice of the charge or exposed him to the danger of a second prosecution for the same offense. Thus, the trial court did not abuse its discretion in denying Reed's motion for a new trial based on an alleged material variance.

### III. Newly Discovered Evidence

In his third claim, Appellant asserts that the trial court erred in failing to grant his

---

vague as to require dismissal. *United States v. Harrell,* 737 F.2d 971, 975 n. 4 (11th Cir.1984).

**7.** These documents were made available to defense counsel prior to the trial.

**8.** *See also U.S. v. Alexander,* 850 F.2d 1500 (11th Cir.1988). In *Alexander,* which was relied on by the trial court, the indictment charged conspiracy which commenced on or about October 13, 1980, and which ended on or about February 2, 1984. Testimony was admitted regarding conversations occurring during the summer of

1984. The Court found no prejudicial variance. Although *Alexander* was recently vacated and remanded on other grounds by the Supreme Court, *Alexander v. United States,* —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), the discussion concerning material variance is instructive.

**9.** Reed did not move for a continuance when he learned that the government intended to prove that the events set forth in the indictment occurred in July rather than August of 1986.

motion· for a new trial on the basis of newly discovered evidence.[10] The newly discovered evidence consisted of the testimony of Reed and his friend Alphonso Marsh that Reed was with Marsh on July 9, 1986.

■■■■ A motion for a new trial is addressed to the sound discretion of the trial court, and a decision to deny a new trial motion will not be reversed absent an abuse of discretion. *United States v. Champion*, 813 F.2d 1154 (11th Cir.1987). A motion for a new trial must be viewed with "great caution." *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir.1988) (quoting *Bentley v. United States*, 701 F.2d 897, 898 (11th Cir.1983)). This Court has consistently required that five elements be satisfied to justify a new trial on the basis of newly discovered evidence: (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material· to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result. *See United States v. DiBernardo*, 880 F.2d 1216 (11th Cir.1989); *United States ·v. Burton*, 871 F.2d 1566 (11th Cir. 1989); *United States v. Champion*, 813 F.2d 1154 (11th Cir.1987). As a matter of law, the trial court cannot grant a motion for a new trial based on newly discovered evidence once it has determined. that the movant has failed to satisfy any part of the five-part test. *See United States v. Hall*, 854 F.2d 1269 (11th Cir.1988).[11] In the

instant case, the trial court found that Reed "failed to meet the criteria necessary to entitle him to a new trial." Our review leads us to conclude that Reed failed to satisfy his ·burden with respect to at least two of the elements necessary to justify a new trial. Accordingly, we find that the trial court acted within its discretion in denying Reed's motion for a new trial based on newly discovered evidence.

First, this Court finds that Reed did not satisfactorily explain why he failed to come forward with the evidence until 46 days after the guilty verdict was received and three days prior to his scheduled sentencing hearing. Thus, he failed to show that he acted with due diligence to discover the evidence.

■■■■ Second, we agree with the trial court that this evidence is not of such a nature that it would be likely to produce a new result at trial. In denying Reed's motion for a new trial, the district court judge found that the testimony of Marsh and Reed was not credible.[12] In so finding, the court noted that on November 17, 1988, Marsh was able to recall in detail the events of July 8 and 9, 1986, while, on November 17, 1988, Marsh could not remember where he was on three specific days in September of 1988. The court also found incredible Reed's testimony that he used notes and conversation to reconstruct where he was on July 9 through 11, 1986.

Even assuming that the testimony of Marsh and Reed was credible, that testimony is simply not of such a nature that a

---

10. The motion for new trial based on newly discovered evidence was actually Reed's second motion for a new trial. Appellant also asserts that his first motion for a new trial should have been granted. The first motion addressed several issues including the prosecutor's "flag" remark and the alleged material variance in the indictment. For the reasons set forth above, we conclude that the trial court properly denied the first motion.

11. In his brief, Reed also contends .that the government deliberately deceived Reed by failing to disclose to Reed that it ·would present proof that the offense occurred on a different date than that set forth in the indictment. We find no merit in this claim.

12. In ruling on a motion for new trial based upon newly discovered evidence, it is within the province of the trial court to consider the credibility of those individuals who give statements in support of the motion. *Jones v. United States*, 279 F.2d 433 (4th Cir.1960) ("Stringent or artificial limitations upon the exercise of the discretionary power of the trial judge to grant new trials could only subvert the purpose of the remedy"). Where there is a grave question of the credibility of after-discovered evidence, the role of the trial judge is that of the fact finder, so much so that the Supreme Court in *United States v. Johnson*, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946), said that an appeal from his resolution of the facts should be dismissed as frivolous. *See United States v. Barlow*, 693 F.2d 954 (6th Cir.1982).

new trial would probably produce a new result. Contrary to Reed's assertion, the proffered "alibi" testimony that Reed was with Marsh through the period from July 9 to July 11 would not preclude a finding that Reed committed the offenses reasonably close to the time charged. As discussed above, the indictment charged that the offense occurred "on or about" a certain date, and therefore the government was not limited to proving the offense occurred on a specific date. Moreover, none of the witnesses testified with any certainty as to the date on which the delivery of money took place. Considering all the evidence, even if the jury accepted the testimony of Marsh and Reed as true, it could still find that the money was in fact delivered to Reed as charged. So, we cannot say that this testimony would probably produce a new result.[13] Accordingly, the trial court did not abuse its discretion in denying Reed's motion for a new trial on the basis of newly discovered evidence.

## IV. Admission of a Cassette Tape

Appellant asserts that the trial court abused its discretion in admitting a tape that was not shown by the government to be free of material deletions, additions or alterations.

▮ Although the preferred practice is for the government to produce evidence regarding the competence of the tape machine operator, fidelity of the equipment, the absence of alterations to the tape and the identity of the speakers, the trial court has broad discretion to allow tapes into evidence without such a showing so long as there is independent evidence of accuracy. *United States v. Richardson,* 764 F.2d 1514, 1523–24 (11th Cir.1985). The record of the hearing on Reed's motion to sup-

press the tape shows that the United States laid an adequate foundation for the introduction of the tape. Accordingly, we find that the trial judge properly acted within his discretion in admitting the tapes.

## V. Admission of Hearsay

In his fifth point on appeal, Reed asserts that the trial court committed prejudicial error in allowing Woodson Chesser to testify that, in 1986, Bobby Chesser told him that Reed would assist Anthony Chesser for $10,000. The government offered the challenged testimony to reaffirm the credibility of Bobby Chesser's testimony on direct. The trial court found that the testimony fell within the "prior consistent statement" exception of Rule 801(d)(1)(B) because defense counsel had implied during his cross-examination of Bobby Gene Chesser that Chesser recently fabricated his testimony.

▮ A district court is granted broad discretion in determining the admissibility of a prior consistent statement and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Mock,* 640 F.2d 629 (5th Cir.1981). Federal Rule of Evidence 801(d)(1)(B) provides in relevant part that:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....

Reed argues that although the defense conducted a "probing" cross-examination of Bobby Gene Chesser to show potential bias

---

**13.** While Reed maintains that he has met the requirement that he show the evidence is of such a nature a new trial would probably produce a new result, in his brief Reed contends that under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), he need only show "a reasonable likelihood that the judgment of the jury would be affected" by the new evidence. In *Giglio,* the government's key witness, who was a coconspirator, testified at trial that the he had not been promised immuni-

ty in return for his testimony. After trial, the defense learned that the witness had in fact been told by an assistant United States attorney that he would not be prosecuted if he testified at trial. The United States Supreme Court held that the government's nondisclosure of evidence relevant to the coconspirator's credibility violated due process and justified a new trial. *Giglio* is not applicable to this case because this case does not involve the prosecution's failure to disclose relevant evidence to the defense.

or ulterior motive, the cross-examination did not reach the level of a charge of recent fabrication and, therefore, the Rule 801(d)(1)(B) exception was erroneously applied. Reed also asserts that the statement should not have been admitted because it contains hearsay within hearsay [14] and that each level of the statement does not qualify as an exception. Reed cites *U.S. v. Pendas–Martinez*, 845 F.2d 938 (11th Cir.1988), in support of these claims.

The defendants in *Pendas–Martinez* were charged with possession with intent to distribute marijuana on board a vessel of the United States. During trial, the court admitted a coast guard officer's report concerning the chase and arrest of the defendant. The defendants appealed their convictions and argued, *inter alia*, that the report constituted "written summaries of the government's case" which should not have been introduced. The government contended that the trial court properly admitted the officer's report as a prior consistent statement to rebut a charge of that the officer fabricated his testimony that marijuana seeds were discovered on the defendants' boat.

This Court rejected the government's argument that the officer's report was admissible under Rule 801(d)(1)(B), finding that the defendant's counsel had not implied that a witness had fabricated a story to strengthen the State's case. We further held that, even if counsel had implied fabrication, the report was inadmissible under Rule 805 because it contained numerous examples of hearsay within hearsay which were unrelated to the officer's testimony concerning the marijuana seeds and which the trial court had refused to delete from the report.

The instant case is readily distinguishable from *Pendas–Martinez*. In his opening statement, defense counsel stated that the defense would prove that Bobby Gene Chesser is a "con man" who "concocted it all and made up these lies … on Tom Reed." The record in this case clearly reflects that defense counsel implied on cross-examination that Bobby Gene Chesser fabricated his testimony regarding his agreement with Reed.[15]

We are also unpersuaded by Reed's argument that the challenged statement involves hearsay not admissible as a prior consistent statement under Rule 801(d)(1)(B). Chesser testified and underwent rigorous cross-examination concerning his agreement with Reed. The statement related specifically to a matter on which Bobby Gene Chesser had been impeached and was consistent with Chesser's testimony. Accordingly, we find that the trial court properly admitted the statement under Rule 801(d)(1)(B) as a prior consistent statement offered to rebut an implied charge of recent fabrication or improper motive.

## VI. Jury Examination of Transcript

In this issue, Reed argues that the trial court erred in refusing to grant a motion for mistrial or new trial based upon the fact that the jury took a transcript of a tape recorded conversation which was not admitted into evidence into the jury room. The transcript had been used during the trial to assist the jury in understanding the tape recording. The propriety of the government's use of transcripts of tape recordings as an aid to the jury is well-established, and the use of such transcripts is not restricted to the time of presenting the tapes to the jury. *United States v. Brown*, 872 F.2d 385 (11th Cir.1989). "[A]bsent a showing that the transcripts are inaccurate or that specific prejudice occurred, there is

---

**14.** Federal Rule of Evidence 805 provides, in pertinent part:

Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statement conforms with an exception to the hearsay rule provided in these rules.

**15.** In addition, we note that the trial judge advised the defense that he would permit the pros-

ecution to present Woodson Chesser's challenged testimony unless Reed's counsel would agree not argue that Bobby Gene Chesser fabricated the story. Reed's attorney responded by stating that he believed the defense should be permitted to argue that Bobby Gene Chesser fabricated the story. Vol. 6, pp. 56–57.

no error in allowing transcripts to go into the jury room." *Id.* at 392.

In this case, Reed has not questioned the accuracy of the transcripts. Further, Reed has asserted only a general claim that he was prejudiced by the jury's alleged use of the transcripts. We conclude that the trial court did not err in denying Appellant's motion for a mistrial or new trial on this ground.

### CONCLUSION

The conviction of Thomas Reed is AFFIRMED.