[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14461
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00037-WS-C-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL LAMAR SWEAT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 10, 2015)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Michael Lamar Sweat was indicted by a federal grand jury on one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846 (Count One), one count of attempted manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and one count of possession of pseudoephedrine with knowledge and reasonable cause to believe that it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2) (Count Five).  The indictment also charged co-defendants William Cowart and Jammie Hopkins—Cowart and Hopkins pleaded guilty to the charges, and Sweat proceeded to trial.  At the conclusion of the prosecution's case in chief, Sweat moved for judgment of acquittal as to all counts charged in the indictment.  The district court granted the motion as to Count Two, but denied his motion as to Counts One and Five.  Sweat was convicted of Counts One and Five.

On appeal, Sweat contends that there was insufficient evidence to support a conviction as to those counts.  As to Count One, Sweat argues that there was insufficient evidence to establish the existence of a single conspiracy, as opposed to multiple conspiracies.  With respect to Count Five, Sweat avers that there was insufficient evidence to establish that the date listed on the indictment was reasonably near the date of his possession.  Finally, Sweat argues that the district court committed clear error in determining the drug quantity attributable to him

2

and in denying him a sentence reduction for having played a minor or minimal role in the commission of the offense.

After review of the parties' briefs and the record on appeal, we conclude that Sweat's arguments are without merit and thus affirm his convictions and sentence.

## I. Sufficiency Of The Evidence

The district court's denial of judgment of acquittal based on sufficiency of evidence grounds is reviewed de novo. *See United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). We "consider[] the evidence in the light most favorable to the [g]overnment, and draw[] all reasonable inferences and credibility choices in the [g]overnment's favor." *Id.* However, where a defendant challenges a denial of a judgment of acquittal based on insufficient evidence with an argument not presented before the district court, our review is for plain error. *See United States v. Joseph*, 709 F.3d 1082, 1103 (11th Cir. 2013). Plain error occurs when there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010) (internal quotation marks omitted). If the first three conditions are met, then we "may exercise discretion to correct a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or pubic reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

## A. Count One

3

Sweat contends that Count One should have been dismissed because a reasonable jury could not have concluded beyond a reasonable doubt that a single conspiracy existed.  The evidence, according to Sweat, established the existence of multiple conspiracies.  However, because Sweat never presented the argument that the evidence established multiple conspiracies rather than a single conspiracy before the district court, we review denial of his motion for judgment of acquittal as to Count One for plain error.  *See Joseph*, 709 F.3d at 1103.

A jury may freely choose among reasonable interpretations of the evidence, and the evidence is not required to exclude "every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Williams*, 390 F.3d 1319, 1323–24 (11th Cir. 2004) (internal quotation marks omitted).  We must affirm a conviction unless the jury could not have found the defendant guilty beyond a reasonable doubt under any reasonable construction of the evidence.  *See United States v. Edouard*, 485 F.3d 1324, 1349 (11th Cir. 2007).

A conviction will not be reversed when a single conspiracy is charged in the indictment and multiple conspiracies are revealed at trial unless the resulting variance is both material and substantially prejudicial.  *Id*. at 1347.  Thus, a jury's determination that a single conspiracy existed will not be disturbed if it is supported by substantial evidence, even when the existence of multiple

4

conspiracies is arguable. *See id.* (The arguable existence of multiple conspiracies is insufficient to find a material variance when a reasonable jury could have found a single conspiracy.). In order to determine "whether the jury could have found a single conspiracy, we consider: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *Id.* (internal quotation marks omitted).

In this case, the government charged that Sweat conspired with codefendants Hopkins, Cowart, and other persons to manufacture methamphetamine. The nature of the underlying scheme was for Sweat, Hopkins, Cowart, and other individuals to buy pseudoephedrine that would later be sold to Cowart. Cowart would then use the pseudoephedrine to manufacture methamphetamine. While Cowart was responsible for manufacturing the methamphetamine, he relied on Sweat, Hopkins, and other individuals to provide the necessary amount of pseudoephedrine to manufacture methamphetamine. While separate transactions to sell pseudoephedrine to Cowart may have occurred, these separate transactions did not necessarily establish multiple conspiracies because there was a common goal to manufacture the methamphetamine, and the co-conspirators intentionally joined in this goal. *See id.* (separate transactions do not separate conspiracies when conspirators act in furtherance of a common objective, and when a defendant's conduct aides the objectives of other co-conspirators a single conspiracy is

5

demonstrated).  Therefore, because we conclude that a common goal existed among the co-conspirators such that a reasonable jury could have concluded that a single conspiracy existed, the jury's verdict as to Count One will remain undisturbed.  *See id.*

### B. Count Five

According to Sweat, Count Five was not sufficiently proven because the alleged date of its commission in the indictment was not reasonably near his possession of pseudoephedrine.  Sweat argues that the last of three purchases that were accompanied by Cowart occurred on August 27, 2013, and there was no evidence to establish that his December 18, 2013 purchase of pseudoephedrine was for an illegal purpose.  Sweat contends that while Cowart testified that he received pseudoephedrine from Sweat between August and December of 2013, Cowart never testified to a specific date.

It is required that the allegations in the indictment and the proof at trial correspond so that a defendant receives proper notice of the charges; such notice will allow the defendant to assert a defense, and ensure that the he remain guarded against subsequent prosecution for the same offense.  *See United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989).  It is well-settled that "proof of a date reasonably near to the specified date is sufficient" when an indictment charges an offense using the designation "on or about."  *See United States v. Champion*, 813

6

F.2d 1154, 1168 (11th Cir. 1987). When this designation is used, "the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment." *Reed*, 887 F.2d at 1403.

Here, the date in the indictment alleging that Sweat knowingly and willfully possessed pseudoephedrine with knowledge and reasonable cause to believe that it would be used to manufacture methamphetamine was December 18, 2013. The indictment used the designation "on or about," and thus Sweat was on notice that the charge was not limited to the date set out in the indictment. *Id*. Given that the pseudoephedrine logs used at trial indicated that Sweat purchased pseudoephedrine on December 18, 2013, and Cowart's testimony that Sweat personally provided him pseudoephedrine between August and December of 2013, the jury could have reasonably concluded that the purpose of Sweat's December 18, 2013 purchase was to provide Cowart with pseudoephedrine to manufacture methamphetamine. *See Edouard*, 485 F.3d at 1349. Furthermore, Sweat does not establish that any variance in the date prevented him from presenting his defense, nor does any variance raise the possibility that Sweat may be prosecuted again for the same offense. *See Reed*, 887 F.2d at 1403. Therefore, because we conclude that a reasonable jury could have concluded that Sweat purchased pseudoephedrine reasonably near to the date alleged in the indictment with knowledge that it would

7

be used to manufacture methamphetamine, the jury's verdict as to Count Five will also remain undisturbed.

Accordingly, the district court did not err in denying Sweat's motion for judgment of acquittal as to both counts One and Five.

## II. Attributed Drug Quantity

Sweat argues that the district court erred in holding him accountable for purchases made by other co-conspirators that were disconnected from him. He claims that his relevant conduct covered 65.67 grams of pseudoephedrine, which represented his own purchases and attempted purchases of pseudoephedrine, in addition to instances when he accompanied his wife to the store while she made purchases of pseudoephedrine. Sweat argues that the district court's use of the Sentencing Commission's fifty percent ratio of pseudoephedrine to actual methamphetamine found in the Guidelines' Chemical Quantity tables was arbitrary.

We review the sentencing court's determination of the quantity of drugs attributable to a defendant for clear error. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). We will only find clear error and disturb the district court's quantity determination if we are "left with a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). A

8

district court's application of the Guidelines to those facts is reviewed de novo. *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006) (per curiam).

The government bears the burden of establishing the disputed quantity by a preponderance of the evidence. *See Almedina*, 686 F.3d at 1315. When determining the approximate drug quantity, "the [district] court may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period of time." *Id*. at 1316. "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (per curiam). "For sentencing purposes[,] member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and [acts] that are reasonably foreseeable in connection with that activity." *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993).

Sweat agreed to purchase pseudoephedrine for Cowart knowing that he would use it to manufacture methamphetamine and drove both Cowart and Hopkins to stores in order to purchase pseudoephedrine. He is liable for the foreseeable acts of both Cowart and Hopkins that were in furtherance of the activity that he agreed to undertake. *See Ismond*, 993 F.2d at 1499. Sweat is

9

accountable for both the pseudoephedrine he bought for the conspiracy and for the pseudoephedrine bought by both Cowart and Hopkins, which the district court fairly and accurately approximated to be 155.6 grams based on the evidence. Contrary to Sweat's assertions, a review of the record reveals that the district court only held him accountable for his own purchases and the purchases of Cowart and Hopkins.

Finally, Sweat's argument that the district court's use of the fifty percent ratio of pseudoephedrine to actual methamphetamine found in the Guidelines' Chemical Quantity Table is arbitrary fails because Sweat may not challenge the reasonableness of the Sentencing Guidelines. *See United States v. Dorman*, 488 F.3d 936, 938 (11th Cir. 2007) (holding that the reasonableness standard applies to the final sentence, not to each individual decision made during the sentencing process).   Therefore, we conclude that the district court did not commit clear error when determining the attributable drug quantity.

### III. Minor Role Reduction

Sweat argues that he was entitled to a minor role reduction for his conduct in the conspiracy.  He attempts to distinguish himself from Hopkins by contending that Hopkins played a much more prominent role, reasoning that Hopkins not only purchased pseudoephedrine for Cowart, but was also present during the cooking. In addition, he claims that playing a necessary part in the conspiracy does not

10

preclude the imposition of a minor role reduction, as the district court incorrectly concluded.

We review the district court's findings of fact in determining a defendant's role in an offense for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). "[T]he district court has considerable discretion in making this fact-intensive determination . . . ." *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002). The defendant bears the burden of establishing his qualification for a minor role reduction by a preponderance of the evidence. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) (per curiam).

Under the Guidelines, a defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere between a minimal and minor participant. *See* U.S.S.G. § 3B1.2. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of the group." *Id.* § 3B1.2 cmt. n.4. An indication that a defendant's participation may be minimal is his "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id.* Minor participants are those who are "less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. In determining whether a mitigating role

11

adjustment applies, the district court should consider two principles extracted from the Guidelines: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *Rodriguez De Varon*, 175 F.3d at 940. Under the first principle, "the district court must measure the defendant's role against the relevant conduct for which [he] has been held accountable," keeping in mind that certain convictions—such as a conspiracy conviction—will result in some defendants being "held accountable for conduct that is much broader than their specific acts," *id*. at 940–41. In considering the second principle, the district court should first "look to other participants only to the extent that they are identifiable or discernable from the evidence." *Id*. at 944. Then, "the district court may consider only those participants who were involved in the relevant conduct attributed to the defendant." *Id*. Because it is possible that none of the participants are minor or minimal participants, the fact that a defendant's role is less than other participants' roles may not be dispositive. *Id*.

Sweat purchased pseudoephedrine to be used to manufacture methamphetamine and transported both Cowart and Hopkins to stores so that they could do the same. While Cowart may have played the most significant role in the conspiracy as the methamphetamine cook, Sweat participated in the same way as Hopkins did: they both purchased and sold pseudoephedrine to Cowart to facilitate

12

the manufacture of the methamphetamine. *See id.* Given the conduct of Sweat and Hopkins, Sweat was not substantially less culpable or plainly among the least culpable of the co-conspirators. The fact that Sweat bought fewer boxes of pseudoephedrine than Hopkins is of no moment, because it is possible that none of the co-conspirators are minor participants. *See id.* Thus, Sweat has failed to satisfy his burden of establishing by a preponderance of the evidence that he qualifies for a minor role reduction. *See Alvarez-Coria*, 447 F.3d at 1343. Accordingly, we conclude that the district court's finding that Sweat was not a minor participant in the conspiracy was not clearly erroneous.

## IV. Conclusion

Based on the foregoing, we affirm Sweat's convictions and sentence.

**AFFIRMED.**