[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10225
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-00123-TFM-B-6


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE LEE PADGETT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 25, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

After a jury trial, Eddie Padgett was convicted of drug-trafficking offenses involving cocaine and cocaine base and sentenced to serve a total of 240 months in prison. He challenges his convictions and sentence on appeal. As to his convictions, he maintains that (1) the district court abused its discretion by failing to exclude evidence of a shooting under Rule 403, Fed. R. Evid.; (2) the evidence at trial materially varied from what was alleged in the indictment as to Count 10, one of the substantive drug offenses; and (3) insufficient evidence supported the jury's finding of the quantity of drugs he was responsible for in the conspiracy. With regard to his sentence, he contends that the court erred in failing to apply guideline reductions for acceptance of responsibility and a mitigating role in the offense. After careful review, we affirm in all respects.

## I.

In May 2019, a federal grand jury returned a 42-count superseding indictment charging Padgett and five others with various criminal offenses. Padgett was charged with (1) conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than 280 grams of cocaine base ("crack" cocaine) "[f]rom in or about early 2018, continuing through on or about April 23, 2019," in violation of 21 U.S.C. § 846 and punishable by § 841(b)(1)(A) (Count 1); and (2) three counts of possession with intent to distribute crack cocaine, in violation of

2

21 U.S.C. § 841(a)(1) and punishable by § 841(b)(1)(B), on May 17, 2018, May 31, 2018, and June 7, 2018, respectively (Counts 10, 11, 12).

Padgett's case proceeded to trial in October 2019. The trial evidence established the following. In early 2017, not long after his release from prison on drug charges, Kendrick Patrick began selling cocaine, crack cocaine, and other drugs from the home he shared with his wife and children. Around the same time, Padgett and his brother moved in with Patrick, and they helped sell drugs for Patrick and did other work around the house. As Patrick's "right-hand man," Padgett sold crack cocaine for him on a "daily basis," occasionally accompanied him on trips to his suppliers, and "was in charge when [Patrick] wasn't around." A confidential informant conducted controlled buys of crack cocaine from Padgett on Patrick's behalf on May 24, May 31, and June 7 of 2018. Patrick estimated that he bought three to four ounces of cocaine per week from his suppliers and that he cooked half that amount into crack cocaine.

The jury also heard evidence of a shooting and murder outside Patrick's home on April 29, 2019. On that date, a man named Skylar Williams, who was known to have robbed others for drugs, including Patrick, showed up at Patrick's home apparently intending to rob him. Padgett handed a gun to Patrick, who shot Williams. Patrick gave the gun back to Padgett, and Padgett fired at Williams's

companion as she drove away.  Padgett then fired multiple shots into Williams' body before putting the body into the trunk of a car and taking it to another location.

Both before and at trial, Padgett moved to prohibit the government from offering evidence about the April 29 shooting incident.  The district court admitted the evidence, finding that it was probative of Padgett's involvement in the drug conspiracy.  The court later instructed the jury that Padgett was "on trial only for the specific crimes charged in the indictment" and that it could "only consider [the shooting evidence] in connection with count one."

At the close of the government's case in chief, Padgett moved for a judgment of acquittal on two grounds: first, that the evidence was insufficient to prove his agreement to the conspiracy charged in Count 1; and second, that no evidence showed that he engaged in a drug transaction on May 17, 2018, as charged in Count 10.  The government responded that the evidence presented at trial showed that the drug deal "actually occurred on or about the 24th, as opposed to the 17th," which was "reasonably near the date charged."

The district court denied the acquittal motion, stating that it would "instruct the jury about on or about" and that there was sufficient evidence of a conspiracy. The court later instructed the jury that "[t]he government doesn't have to prove that the crime occurred on the exact date listed in the indictment. The government only

has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged."

The jury returned a guilty verdict as to each count. As to Count 1, the jury found that Padgett had conspired to possess with intent to distribute over five kilograms of cocaine and over 280 grams of crack cocaine.

## II.

The presentence investigation report ("PSR") recommended that Padgett was responsible for 5.07 kilograms of powder cocaine and 5.07 kilograms of crack cocaine, resulting in a base offense level of 34. Due to Padgett's possession of a firearm and his use of violence, the offense level was increased to 38. Combined with a criminal-history category of I, this resulted in a recommended guideline range of 235 to 293 months of imprisonment.

Padgett objected to multiple aspects of the PSR, including the failure to apply reductions for acceptance of responsibility and for being a minimal participant in the conspiracy. With regard to acceptance of responsibility, he contended that exercising his right to trial did not necessarily prevent him from receiving the acceptance-of-responsibility adjustment and that his defense focused on the quantity of drugs and extent of involvement in the conspiracy.

The district court overruled Padgett's objections. The court found that Padgett had not accepted responsibility because he put the government to its burden of proof

at trial on the conspiracy count.  The court also ruled that he was neither a minor nor minimal participant as he "had substantial dealings in this organization" and had "participated in a killing to protect the organization and an attempted coverup of the organization's activities."  Ultimately, the district court sentenced Padgett to a total prison term of 240 months.  Padgett now appeals.

### III.

We begin with Padgett's challenges to his convictions.  Padgett asserts that (1) the district court abused its discretion by admitting evidence of a violent crime with little probative value to the drug charges, (2) the trial evidence materially varied from what was alleged in the superseding indictment as to Count 10, and (3) the evidence was insufficient to the support the jury's drug-quantity findings.

### A.

Padgett first argues that the district court abused its discretion by admitting evidence of the April 29, 2019, shooting under Rule 403, Fed. R. Evid.  We review the district court's evidentiary rulings for an abuse of discretion.  *United States v. Barsoum*, 763 F.3d 1321, 1338 (11th Cir. 2014).

Evidence of other bad acts may be admissible as either "intrinsic" or "extrinsic" to the charged offenses.  Evidence is considered "intrinsic" "if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or

(3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quotation marks omitted). Evidence of uncharged conduct that does not fall within these categories is considered "extrinsic" and is governed by Rule 404(b), Fed. R. Evid. *Id.*

"All admissible evidence, whether intrinsic or extrinsic, must be weighed against Rule 403 prejudice." *Id.* "[T]he district court must find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of Rule 403." *United States v. Ford*, 784 F.3d 1386, 1392–93 (11th Cir. 2015). "[U]nfair prejudice," the Supreme Court has advised, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

"Exclusion under Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Troya*, 733 F.3d at 1132 (quotation marks omitted). In reviewing a district court's Rule 403 ruling, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (quotation marks omitted). Nevertheless, there are limits "regarding the quality and quantity of

evidence that may be introduced," and we must balance "the degrees of probative value that a piece of evidence has and its prejudicial effect." *Id.*

We have affirmed the admission of uncharged violent conduct in drug-conspiracy cases, over Rule 403 challenges, where the evidence was probative of the conduct of the conspiracy and the defendant's role in the conspiracy.  In *United States v. Ross*, for example, we upheld the admission of evidence of three violent acts—a bombing, a murder, and another shooting—because "these acts were intertwined with the drug conspiracy and probative of Appellant's role in the conspiracy" and were not unfairly prejudicial.  33 F.3d 1507, 1525 & n.31 (11th Cir. 1994) (noting that the violent acts "were committed to protect the [conspiracy] and to advance its drug sales").  Likewise, in *Troya*, we concluded that evidence of a shooting was admissible as intrinsic evidence of the charged drug conspiracy because it "was done to protect the Appellants' extensive drug operation."  733 F.3d at 1132.  Citing our long-standing recognition that "[g]uns and violence go hand-in-hand with illegal drug operations," we held that the shooting's "admissibility was [not] outweighed by Rule 403 prejudice," as it was probative of "the underpinnings of the drug trafficking ring, and the lengths to which Appellants would go to protect it."  *Id.* (quotation marks omitted).

Here, the district court did not abuse its discretion when it admitted evidence of the shooting and murder of Williams at Padgett's trial.  As in *Ross*, the evidence

of the shooting was "intertwined with the drug conspiracy and probative of [Padgett's] role in the conspiracy." 33 F.3d at 1525 & n.31. The shooting occurred in response to an apparent attempted drug robbery at the location where the conspiracy operated, and the evidence showed that Padgett was armed and willing to defend the conspiracy.[1] *See id.*; *Troya*, 733 F.3d at 1132. The evidence was therefore probative of the contested issue of his participation in the conspiracy, and its "admissibility was [not] outweighed by Rule 403 prejudice." *Troya*, 733 F.3d at 1132 ("Guns and violence go hand-in-hand with illegal drug operations."). Accordingly, we affirm the district court's ruling on this issue.

## B.

Padgett contends that there was a material variance as to Count 10 between the allegations in the superseding indictment and the facts established as trial.

The allegations of the indictment and the proof at trial must correspond so that a defendant is properly notified of the charges to defend against and is protected against the possibility of prosecution for the same offense. *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989). An impermissible variance occurs "when the evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012)

---

[1] Because the indictment alleged that the conspiracy ended "on or about" April 23, 2019, there was some wiggle room as to the end date of the conspiracy and the jury reasonably could have concluded that the April 29, 2019, shooting was during and in relation to the conspiracy.

9

(quotation marks omitted).  Even if a material variance happens, to obtain reversal, the defendant must establish that he suffered "substantial prejudice as a result," which ordinarily means showing that "the proof at trial differed so greatly from the charges that appellant was unfairly surprised and was unable to prepare an adequate defense." *Id.* (quotation marks omitted).

An allegation that an offense occurred "on or about" a certain date is sufficient to put the defendant "on notice that the charge is not limited to the specific date or dates set out in the indictment." *Reed*, 887 F.2d at 1403.  So no material variance happens when the trial evidence establishes a date "reasonably near the specified date."  *Id.*; *United States v. Champion*, 813 F.2d 1154, 1168 (11th Cir. 1987).  "Ordinarily, a variance between the date alleged and the date proved will not trigger reversal as long as the date proved falls within the statute of limitations and before the return of the indictment." *Reed*, 887 F.2d at 1403.

Here, Padgett has not established a material variance or resulting substantial prejudice.  Counts 10, 11, and 12 of the superseding indictment alleged that Padgett possessed with intent to distribute crack cocaine "on or about" May 17, May 31, and June 7 of 2018, respectively, while the trial evidence showed that Padgett conducted sales of crack cocaine on May 24, May 31, and June 7 of 2018.  Although the indictment and the trial evidence differed on the date of the first sale, May 24 was still near enough to what had been alleged that little risk of unfair surprise existed.

*See Reed*, 887 F.2d at 1403 (affirming despite a one-month variance between the indictment's allegations and the trial evidence). Nor has Padgett made any showing that he was unable to prepare an adequate defense. As it had alleged in the indictment, the government proved that Padgett was personally involved in three drug sales in a period of less than one month, in furtherance of the conspiracy charged in Count 1. Although it appears that another drug sale not involving Padgett occurred on May 17, which defense counsel highlighted at trial, defense counsel expressed no surprise at the evidence regarding the May 24 sale, which was relevant to the contested issue of Padgett's participation in the conspiracy. Because there was no "unfair surprise" even if a variance occurred, we affirm the district court's denial of a judgment of acquittal on this ground.

## C.

As a final challenge to his convictions, Padgett contends that the jury's drug-quantity findings of more than five kilograms of cocaine and more than 280 grams of crack cocaine were not supported by sufficient evidence. Either finding was sufficient to raise the statutory minimum to ten years and the statutory maximum to life imprisonment for the conspiracy count. *See* 21 U.S.C. § 841(b)(1)(A); *United States v. Curbelo*, 726 F.3d 1260, 1269 (11th Cir. 2013) ("Because § 841(b)(1)(A) . . . impose[s] a mandatory minimum, the drug quantities in th[at] subsection[] are

elements of the offense . . . and must be charged in the indictment and submitted to a jury.").

"Ordinarily, we review *de novo* whether sufficient evidence supports a conviction, viewing the evidence and taking all reasonable inferences in favor of the jury's verdict." *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013). But where, as here, a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the particular challenge he tries to raise on appeal, the defendant has a "heavier burden" as to the unpreserved challenge: "we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." *Id.* (quotation marks omitted); *see United States v. Batson*, 818 F.3d 651, 664 (11th Cir. 2016).[2] To meet that burden, the defendant must show "that the record is devoid of evidence of an essential element of the crime or that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Fries*, 725 F.3d at 1291.

Here, Padgett has not met his burden with regard to the drug-quantity sufficiency challenge, which he did not raise below. The jury heard evidence that beginning in early 2017, Patrick began buying three ounces of cocaine per week,

---

[2] Although we occasionally describe this review as for "plain error," *see United States v. Batson*, 818 F.3d 651, 664 (11th Cir. 2016), we explained in *Fries* that the standard we apply to preserved sufficiency challenges "is better stated as requiring that we uphold the conviction unless to do so would work a "manifest miscarriage of justice." 725 F.3d at 1291 n.5.

12

half of which he cooked into crack cocaine, and that Padgett began living with him around the same time and sold drugs for him on a "daily basis" as his "right-hand man" who was in charge when Patrick was not around.  In addition, there was evidence that Padgett conducted three specific drugs sales in May and June of 2018 and that he helped protect the conspiracy by force in April 2019.  Given the length and extent of Padgett's involvement in the conspiracy, combined with the weekly amount of cocaine Patrick received from his supplier, the evidence was not "so tenuous" that the jury's drug quantity finding was "shocking." *See Fries*, 725 F.3d at 1291.

Based on the trial evidence, the jury reasonably could have found that the conspiracy in which Padgett was substantially involved lasted for more than 59 weeks and involved three ounces of cocaine per week, which would have been enough to put the quantity of cocaine above five kilograms (three ounces per week for 59 weeks equals 177 ounces, which is just over five kilograms).  Moreover, the jury heard from Patrick that he converted half the cocaine to crack cocaine, which would mean an amount of crack cocaine well in excess of 280 grams.  Accordingly, Padgett has not shown that reversing the jury's drug-quantity findings "is necessary to prevent a manifest miscarriage of justice." *Fries*, 725 F.3d at 1291.

## IV.

Finally, we consider Padgett's sentencing challenges to the denial of reductions for (1) acceptance of responsibility and (2) a mitigating role in the offense. We address each in turn.

## A.

"We review a district court's determination of a defendant's acceptance of responsibility for clear error." *United States v. Andres*, 960 F.3d 1310, 1318 (11th Cir. 2020). To obtain the two-level guideline reduction for acceptance of responsibility, the defendant must "clearly demonstrate[] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).

The commentary to § 3E1.1 explains that this reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, cmt. n.2. In "rare situations" a defendant who proceeds to trial may clearly demonstrate acceptance of responsibility, such as "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.* But "[a] defendant who fails to accept responsibility for all of the crimes he has committed and with which he has been charged is entitled to nothing under § 3E1.1." *United States v. Thomas*, 242 F.3d 1028, 1034 (11th Cir. 2001).

Here, the district court did not clearly err in denying Padgett a reduction for acceptance of responsibility. While Padgett conceded at trial that he was guilty of two of the four offenses, he contested his factual guilt on the other two offenses, including "whether he [was] a participant" in the conspiracy. Thus, this is not an occasion where a defendant went to trial to preserve an issue aside from his factual guilt. *See* U.S.S.G. § 3E1.1, cmt. n.2. And his partial acceptance of responsibility was insufficient to warrant this adjustment. *See Thomas*, 242 F.3d at 1034. The district court did not clearly err.

**B.**

We review the denial of a role reduction for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted). It will rarely be clear error when the court makes a "choice between two permissible views of the evidence as to the defendant's role in the offense." *Id.* (quotation marks omitted). The defendant must prove his mitigating role in the offense by a preponderance of the evidence. *Id*.

A defendant who has a mitigating role in an offense may receive a decrease in his offense level. *See* U.S.S.G. § 3B1.2. The guidelines direct courts to apply a two-level decrease for a "minor participant," a four-level decrease for a "minimal

15

participant," and a three-level decrease for someone in between a minor and minimal participant. *Id.* A minor participant is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal," while minimal participants are "plainly among the least culpable of those involved in the conduct of a group." *Id.*, cmt. nn.4 & 5. The determination of whether to apply a mitigating-role adjustment "is heavily dependent upon the facts of the particular case." *Id.*, cmt. n.3(C).

Here, the district court's finding that Padgett was not a minor or minimal participant was amply supported by the record. While Patrick plainly was the leader of the conspiracy, the trial evidence reflects that Padgett was his "right-hand man" and in charge when Patrick was not around, that he regularly sold drugs for the conspiracy and used violent force to protect it, and that he was more culpable than Patrick's wife and Padgett's brother, two other participants in the conspiracy. In light of these facts, we are not left with a definite and firm conviction that the district court made a mistake in concluding that Padgett's role in the conspiracy was neither minimal nor minor. Thus, we affirm the denial of a role reduction.

## V.

In sum, we affirm Padgett's drug convictions and his total prison sentence of 240 months.

**AFFIRMED.**

16